275 N.J. Super. 140 (1994)
645 A.2d 1197
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANCISCO LADO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 1994.
Decided July 5, 1994.
*143 Before Judges BRODY, STERN and KEEFE.
Carol Ann Welsch, Designated Counsel, argued the cause for appellant (Susan L. Reisner, Acting Public Defender, attorney; Ms. Welsch, of counsel and on the brief).
Francisco Lado filed a supplementary letter brief, pro se.
Carol M. Henderson, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General, attorney; Ms. Henderson, of counsel and on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Defendant was indicted for terroristic threats, N.J.S.A. 2C:12-3 (counts one and nine); fourth degree aggravated assault, N.J.S.A. 2C:12-1b(4) (counts two and four); third degree aggravated assault, N.J.S.A. 2C:12-1b(2) (count three); third degree endangering the welfare of children, N.J.S.A. 2C:24-4 (count five); purposeful *144 or knowing murder, N.J.S.A. 2C:11-3a(1) and (2) (count six); possession of a firearm without a permit, N.J.S.A. 2C:39-5b (count seven); possession of a firearm for the purpose of using it unlawfully against the person of another, N.J.S.A. 2C:39-4a (count eight), and witness tampering, N.J.S.A. 2C:28-5 (count ten). The first three counts involved acts against defendant's wife, Elizabeth Lado, between January 1 and March 15, 1989. The fourth and fifth counts related to other criminal acts during the same period. Counts six, seven and eight involved the murder and possession of a firearm on March 15, 1989. Counts nine and ten involved events involving defendant's wife between March 15, 1989 and June 1, 1989.[1]
Defendant made several pretrial motions, including one to sever the counts not related to the March 15, 1989 events from the remaining counts of the indictment. The motion was granted only in part, and counts four and five were severed for purposes of trial.
Defendant was found not guilty of count three, but guilty of the remaining charges on which he was tried.[2] On the murder conviction, defendant was sentenced to life imprisonment, with thirty years to be served before parole eligibility. Concurrent sentences were imposed on the other counts. An aggregate of $180 in V.C.C.B. penalties was also imposed.
Defendant appeals and argues:

*145 POINT I THE INDICTMENT IMPROPERLY JOINED COUNTS ONE THROUGH THREE TO COUNT SIX (THE MURDER COUNT)
A. The counts were improperly joined because they were not connected or part of a common scheme or plan.
* * * * * * * *
B. The judge's instructions were inadequate because they did not caution the jury to deliberate separately on each of the counts. (Not Raised Below).
C. Prosecutor's comment in summation (Not Raised Below).
D. The joinder of counts was prejudicial.
* * * * * * * *
POINT II THE TRIAL JUDGE ERRED IN ADMITTING INTO EVIDENCE CONFIDENTIAL COMMUNICATIONS BETWEEN DEFENDANT AND HIS FORMER WIFE.
POINT III THE TRIAL JUDGE ERRED IN FAILING TO GRANT A MISTRIAL WHEN THE PROSECUTOR REFERRED IN HIS OPENING TO EVIDENCE THE JUDGE HAD PREVIOUSLY RULED WAS UNDULY PREJUDICIAL.
POINT IV THE PROSECUTOR'S FAILURE TO DISCLOSE PRIOR TO TRIAL DEFENDANT'S ALLEGED INCULPATORY STATEMENTS DEPRIVED DEFENDANT OF A FAIR TRIAL.
POINT V THE POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE CONVICTION SHOULD HAVE BEEN MERGED WITH THE MURDER CONVICTION BECAUSE THERE IS NO EVIDENCE THAT DEFENDANT HAD A BROADER UNLAWFUL PURPOSE THAN THE MURDER. (NOT RAISED BELOW).
POINT VI DEFENDANT'S SENTENCE WAS EXCESSIVE BECAUSE THE TRIAL JUDGE MISTAKENLY CONCLUDED THAT DEFENDANT'S RECORD SHOWED A HISTORY OF AGGRESSIVE BEHAVIOR WHEREAS DEFENDANT HAD NEVER BEEN CONVICTED OF A VIOLENT CRIME. (NOT RAISED BELOW).
We reject defendant's arguments addressed to his conviction and the aggregate sentence. We conclude, however, that the conviction for possession of a firearm for an unlawful purpose (count eight) must merge into the murder conviction. In reaching our disposition, we develop only the issues and related facts which warrant extended discussion. R. 2:11-3(e)(2).
Defendant was employed by Delta Plastics Co. in Newark as a senior maintenance mechanic. The homicide victim, Galo Herrera, was a night shift supervisor and brother of Delta's day shift production manager. Defendant had a poor relationship with the *146 Herrera brothers. Defendant also had problems with his marriage. The evidence revealed that defendant had threatened his wife on numerous occasions in the months before the shooting of Herrera. Defendant was apparently motivated, in part, by a belief that his wife was having an affair with Ed Smith, Delta's plant manager and defendant's supervisor.
Before Herrera was shot, defendant threatened to kill his wife, Smith, and the victim's brother who had a close working relationship with Smith. Approximately one week before the homicide, defendant told his daughter that he wanted to kill Galo Herrera. Defendant also told his wife that he was going to kill someone at work.
Defendant had a history of mental illness. He apparently believed that co-workers were entering his home at night, with his wife's assistance, shooting him with needles, molesting his daughter and forcing him to engage in oral sex. Defendant also believed his co-workers were putting things into his food at work, drugging his coffee and listening in on his telephone calls.
About a month before Herrera's death defendant attempted to shoot his wife. On that occasion (which is the subject of count three), defendant took his wife from the house where his children were watching and dragged her into the garage. When his wife denied cheating on him, defendant called her "a liar" and shot twice in her direction. He subsequently explained that the shots constituted a warning and that he was giving her a "break" by not killing her then "because of the kids."
At another time before the shooting of Herrera, defendant told his wife that, if she loved him, she would "prove to him that [she] didn't have anything to do with what was going on," by killing Smith. Defendant offered his gun for that purpose, and when she declined to do so, defendant became angry. Defendant's wife testified that during this period defendant would not let her sleep at night and threatened her with his gun because of the perceived infidelity.
*147 On March 15, 1989, the date of the homicide, defendant left for work early and told his wife that he did not want their children going to school that day. He instructed her to take the children to his mother's house. Defendant took his gun to work with him.
Defendant arrived at work about 7:00 a.m. and seated himself at the supervisor's desk. When Herrera asked defendant to get up from the desk, defendant grabbed decedent's buttocks, and they both laughed. Dr. Robert Latimer, defendant's forensic psychiatrist, testified that defendant told him that "when I grabbed his ass [Herrera] said stop or I'll screw you in the mouth." Dr. Latimer opined that this exchange could have triggered defendant's homicidal reaction. Defendant immediately left the plant.
Defendant called his wife around 8:08 a.m. from a pay telephone on the New Jersey Turnpike. Defendant again directed his wife to take the children to his mother's house. Defendant also telephoned the plant and reported that he was sick. Thereafter, defendant again called his wife and told her that his head was "bothering" him and that "he couldn't take it any more." Herrera's brother found decedent in his car in the Delta employee parking lot later that morning.
As defendant was observed leaving the plant around the time Herrera's shift ended and his began, defendant became an immediate suspect. The police conducted a search of defendant's home, with his wife's consent, which led to the discovery of bullets in defendant's nightstand which matched one found near Herrera's car. It was also determined that a bullet hole discovered in defendant's garage (presumably from the incident where defendant shot at his wife there) was made by a small caliber bullet similar to that taken from Herrera's body.
The day after Herrera's death, defendant's wife visited him at the jail. Defendant told her she had told the police "too much" and threatened to have her killed if she said "anything else." Defendant's wife also testified that defendant told her that he threw the gun away.
*148 In August 1989 defendant's wife filed for divorce. That month she told police that defendant had owned a gun and about his brother's efforts to remove the bullets from the garage wall on the day of the murder. She also spoke with a detective and appeared in the grand jury. Her cooperation apparently resulted in the superseding indictment.[3] Defendant and his wife were divorced by the time of trial.
Defendant did not testify at the trial. He presented an insanity defense through Dr. Latimer who testified that defendant suffered from "a mild form of dementia," "bizarre delusions of a persecutory and paranoid nature," and "organic delusional syndrome." Latimer concluded that defendant was insane, was unable to understand what he did, and could not distinguish between right and wrong.
The State's forensic expert, Dr. Steven Simring, diagnosed defendant as "malingering," faking symptoms of mental illness. While he thought defendant suffered from a personality disorder and was a substance abuser, Dr. Simring found "no evidence of organic brain disorder" or schizophrenia. The jury rejected an insanity defense.

I.
Defendant contends that the joinder of counts one through three (involving acts against his wife occurring before the murder of Herrera on March 15, 1989) was improper and that the denial of his motion to sever counts one through three from count six requires reversal. We disagree.
Joinder is permissive under R. 3:7-6 "if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." However, a defendant can obtain a severance of counts *149 pursuant to R. 3:15-2, when the joinder of offenses is prejudicial, such as when:
1. he may become embarrassed or confounded in presenting separate defenses; 2. the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or 3. the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one.
[State v. Reldan, 167 N.J. Super. 595, 598, 401 A.2d 563 (Law Div. 1979) (quoting Drew v. United States, 331 F.2d 85, 88 (D.C. Cir.1964)), aff'd o.b. on this issue, but rev'd o.g. 185 N.J. Super. 494, 505-06, 449 A.2d 1317 (App.Div.), certif. denied 91 N.J. 543, 453 A.2d 862 (1982)].
The decision on whether to grant a severance generally "rests within the trial court's sound discretion and is entitled to great deference on appeal." State v. Brown, 118 N.J. 595, 603, 573 A.2d 886 (1990) (severance of defendants); see also State v. Pitts, 116 N.J. 580, 601, 562 A.2d 1320 (1989); State v. Moore, 113 N.J. 239, 273-74, 550 A.2d 117 (1988). "Moreover, courts have held that `the mere claim that prejudice will attach' is not sufficient to support a motion for severance, and require some showing that the joinder of offenses would prejudice the defendant." Id. at 274, 550 A.2d 117, quoting State v. Kent, 173 N.J. Super. 215, 220, 418 A.2d 1322 (App.Div. 1980). See also State v. Manney, 26 N.J. 362, 368, 140 A.2d 74 (1958) ("mere possibility of such harm is not enough to bar joinder or consolidation; if it were, nothing would remain of the rule"). Hence, "[a] critical inquiry" in a case like this "is whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under Evid.Rule 55[4] in the trial of the remaining charges" (State v. Pitts, supra, 116 N.J. at 601-02, 562 A.2d 1320; see also State v. Oliver, 133 N.J. 141, 150-51, 627 A.2d 144 (1993); State v. Moore, supra, 113 N.J. at 274, 550 A.2d 117), and defendant bears the burden of demonstrating prejudice. Id. at 273, 550 A.2d 117.
*150 The motion judge denied a severance because she felt the prior crimes against defendant's wife (counts one through three) would be "evidential of the defendant's motive, plan and intent" in committing the homicide.[5] In this respect the judge's ruling cannot be said to constitute an abuse of discretion. See State v. Pitts, supra, 116 N.J. at 599-602, 562 A.2d 1320 (counts resulting from the threats defendant made two days before the murder not severed from the murder; prior crimes admissible as relevant to defendant's state of mind, intent and motive in killing the decedents).
Here, defendant believed that his wife was conspiring with his co-employees and was having an affair with at least one of them. Further, defendant accused his wife of permitting his co-workers into their house at night, in part, to engage in oral sex. Defendant's forensic expert, Dr. Latimer, related the homicidal act to the incident on the morning of the murder when defendant pinched decedent's buttocks and decedent responded that defendant probably wanted to engage in oral sex. Further, defendant's beliefs about the relationship between his wife and his co-workers account for his conduct both before and at the time of the murder. Thus, we cannot conclude under these circumstances that the joinder was improper (State v. Baker, 49 N.J. 103, 104-105, 228 A.2d 339, cert. denied 389 U.S. 868, 88 S.Ct. 141, 19 L.Ed. 144 (1967); United States v. Park, 531 F.2d 754, 760-62 (5th Cir.1976)), or that the denial of the motion to sever constituted error. State v. Pitts, supra, 116 N.J. at 603, 562 A.2d 1320. Moreover, the judge expressly instructed the jury to "[c]onsider each count of the indictment separately, distinctly, and independently," and that evidence of defendant's guilt on one count did not satisfy the State's burden of proof on any other count or that because he *151 committed one offense he probably committed another. Ibid. at 603, 562 A.2d 1320. We find no reversible error.

II.
Defendant contends that the trial court erred in permitting defendant's wife to testify regarding communications made by defendant to her during their marriage. Specifically, defendant contends that the testimony of his wife in this respect was barred by Evid.R. 28 as it existed at the time of trial. Defendant argues that a new trial is necessary because of the improper admission of her testimony.
At the time of trial, Evid.R. 28, N.J.S.A. 2A:84A-22, provided that:
No person shall disclose any communication made in confidence between such person and his or her spouse unless both shall consent to the disclosure or unless the communication is relevant to an issue in an action between them or in a criminal action or proceeding  coming within Rule 23(2). ... A communication between spouses while living separate and apart under a divorce from bed and board shall not be a privileged communication. (Emphasis added.)
This privilege applied to all confidential communications made between spouses while married, even if the couple was no longer married at the time of trial. Biunno, Current N.J. Rules of Evidence, comment 1 to Evid.R. 28 (1993). Hence, even though defendant and his wife were divorced before the trial began,[6] defendant contends the Rule barred the introduction, over defendant's objection, of his confidential statements made to his wife during their marriage.
After defendant's trial was concluded, Evid.R. 28 (now N.J.R.E. 509), N.J.S.A. 2A:84A-22, was amended, by L. 1992, c. 142, effective on November 17, 1992. See State v. Szemple, 135 N.J. 406, 640 A.2d 817 (1994). The rule, as amended, now provides *152 that communications made "in confidence" between spouses shall not be disclosed
unless both shall consent to the disclosure or unless the communication is relevant to an issue in an action between them or in a criminal action or proceeding in which either spouse consents to the disclosure, or in a criminal action or proceeding coming within Rule 23(2). (Emphasis added.)
The State argues that the amended rule of evidence controls on this appeal. It is true that the amended rule was made effective immediately and applies "to all criminal actions regardless of the date on which the offense was committed or the action initiated," L. 1992, c. 142, § 3, but here the trial was concluded before the effective date of the legislation. See generally, R.S. v. Knighton, 125 N.J. 79, 97, 592 A.2d 1157 (1991); State v. Molnar, 81 N.J. 475, 410 A.2d 37 (1980). It is also true that in State v. Szemple, 263 N.J. Super. 98, 104, 622 A.2d 248 (App.Div. 1993), aff'd 135 N.J. 406, 640 A.2d 817 (1994), we noted that a privileged "communication may now be disclosed by the receiving spouse without restriction and thus it is no longer so that the communication is `once privileged, always privileged.'" (Emphasis added.) The Supreme Court subsequently considered only the 1992 version of the rule, referring to the provision concerning application "to all criminal actions." 263 N.J. Super. at 103, 622 A.2d at 250. However, Szemple was an interlocutory appeal involving a case mistried before conclusion which will have to be retried under the new rule. Id. at 99, 622 A.2d at 248.
It is further true that we must recognize that any reversal on this ground alone may be only academic because upon remand the challenged testimony would now be admissible under the amended rule. See State v. Bethune, 121 N.J. 137, 146, 578 A.2d 364 (1990). Nevertheless, as the case was tried under the former Evid.R. 28, we will assume that we cannot retroactively apply a new rule of law against a criminal defendant already convicted. In any event, we need not decide the issue in light of our disposition, and we therefore need not decide if the marital privilege is merely a rule of evidence and procedural, or has substantive implications. Compare R.S. v. Knighton, supra (dealing with Evid.R. 63(33)).
*153 We nevertheless hold that the trial court properly concluded, under Evid.R. 28 as it then existed, that the testimony of defendant's wife regarding the confidential communications was admissible. The rule expressly provided that the prohibition against confidential disclosures did not apply to a "criminal action or proceeding coming within Rule 23(2)," and Evid.R. 23(2) (now N.J.R.E. 501), N.J.S.A. 2A:84A-17, then provided that:
The spouse of the accused in a criminal action shall not testify in such action except to prove the fact of marriage unless (a) such spouse and the accused shall both consent, or (b) the accused is charged with an offense against the spouse, a child of the accused or of the spouse, or a child to whom the accused or the spouse stands in the place of a parent, or (c) such spouse is the complainant. (Emphasis added.)[7]
The trial court admitted defendant's wife's testimony after noting that Evid.R. 28 was made subject by its terms to Evid.R. 23(2), and concluding that:
I'm satisfied that the wife was an intended victim of sufficiently related conduct to try this case altogether and certainly, the crimes committed against the wife are part and parcel of and relevant to show the motive and perhaps also state of mind of and two of the elements here, intent and knowledge on the part of the defendant in committing the homicide that he is accused of committing.
I don't feel that any of the statements that have been put forth in the proffer are properly within the marital privilege under Evidence Rule 28. I think that they are all hopelessly intertwined for the reasons I stated. So I don't feel that the marital privilege under Evidence Rule 28 is going to bar the State from introducing any of this testimony.
We agree with the judge's analysis, although we emphasize that we do not hold that the joinder of offenses can be perfected merely to "bootstrap" the admissibility of a marital communication in a prosecution in which a non-spouse is the victim or complainant.
In State v. Briley, 53 N.J. 498, 501, 251 A.2d 442 (1969), defendant was charged with atrocious assault and battery of his wife and the murder of her male friend. After defendant found his wife sitting in a car at a motel with the murder victim, *154 defendant shot the victim, then chased his wife and struck her with the gun. Id. at 502-03, 251 A.2d 442. Defendant claimed "that his wife should not have been allowed to testify against him" in the murder prosecution. Id. at 504, 251 A.2d 442. In finding her testimony admissible, the Court noted that Evid.R. 23(2) provided that the spouse of the accused shall not testify in a criminal action "unless ... the accused is charged with an offense against the spouse...." Id. at 506, 251 A.2d 442, and that:
Sensibly construed this language does not restrict the testimony of a wife against a husband to the particular criminal action in which she alone is the victim of his crime. If there is a single criminal event in which she and others are targets or victims of the husband's criminal conduct in the totality of the integrated incident and formal charges are made against the husband for some or all the offenses committed (one of which charges is for an offense against the spouse), the wife should be a competent and compellable witness against her husband at the trial of all the cases regardless of whether they are tried separately or in one proceeding. And, in this connection, it should be immaterial that the offense against the wife does not reach the same dimensions of criminality as it does against the third-party victim.
 [State v. Briley, supra, 53 N.J. at 506-07, 251
 A.2d 442.]
We recognize that in Briley the criminal acts were simultaneous in time and place, but the Court found no abuse of discretion in the trial judge's denial of a motion to sever offenses. Id. at 503, 251 A.2d 442.
Defendant argues that Briley should be narrowly read so that it applies only to a unitary criminal event in which the spouse and others are victims of defendant's simultaneous criminal actions. However, we reject such a narrow reading of Briley in light of our Supreme Court's recent reminder in State v. Szemple, supra, 263 N.J. Super. at 101, 622 A.2d at 249 that "privileges are to be narrowly construed" and "are accepted only to the extent that they outweigh the public interest in the search for the truth." In Szemple, the Supreme Court unanimously held admissible against a husband a confidential marital communication discovered by the wife's father and delivered by him to the prosecutor. 263 N.J. Super. at 101, 622 A.2d at 249. Promotion of the privilege as necessary for harmony between spouses, neither of whom desired its admission, was not dispositive. We are, therefore, satisfied *155 that, in light of the proper joinder of offenses, the testimony was admissible on all counts.

III.
We find it unnecessary to detail defendant's other claims of error addressed to the conviction. Suffice it to say that we find no basis for reversal either because there was no undue prejudice by any inappropriate prosecutorial comment, no abuse of discretion by the trial judge in making rulings on discretionary applications, and no improper presentation before the jury not remedied by a curative instruction. We note that there apparently was a discovery rule violation with respect to the failure to provide a complete accounting of all the wife's pretrial statements known to the prosecutor. See R. 3:13-3(a)(8),[8] -3(f). However, as evidenced by our lengthy discussion concerning the marital privilege, defendant was fully aware that his wife was communicating with the prosecutor and of the essence of those communications. There was no suggestion at the time that most of the comments attributable to defendant's wife were unknown to the defense before she testified. Moreover, it appears undisputed that any failure to provide discovery was inadvertent, that the witness did not decline to speak with the defense, and that she did, in fact, talk with defendant's attorney and investigator long before she testified.

IV.
Defendant argues that his convictions for unlawful possession of a weapon and murder should merge and that his sentence was otherwise excessive. We reject the latter contention, see *156 State v. Ghertler, 114 N.J. 383, 388, 555 A.2d 553 (1989); State v. Roth, 95 N.J. 334, 363-65, 471 A.2d 370 (1984), but agree with the former.
The trial court sentenced defendant to a life term, with thirty years to be served before parole eligibility, on the murder conviction. The judge merged count seven (possession of a weapon without a permit) into count eight (possession of a weapon for an unlawful purpose),[9] and defendant was sentenced thereon to a concurrent ten year term of imprisonment, four years of which are to be served without parole. Defendant contends that his conviction for unlawful possession of a weapon should have merged with the murder because there is no evidence that defendant had a broader unlawful purpose than the homicide.
The concept of merger is constitutionally based and is designed to prevent multiple punishment for a single crime. State v. Truglia, 97 N.J. 513, 522, 480 A.2d 912 (1984). N.J.S.A. 2C:1-8a(1) codifies the test for merger set forth in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), but our Supreme Court has followed a more "flexible approach." See e.g., State v. Cole, 120 N.J. 321, 327, 576 A.2d 864 (1990); State v. Miller, 108 N.J. 112, 116-18, 527 A.2d 1362 (1987); State v. Davis, 68 N.J. 69, 81, 342 A.2d 841 (1975). Moreover, while the United States Supreme Court has held that legislative intent controls with respect to the issue of multiple punishment in a single criminal prosecution and while our Supreme Court has held that our constitutional double jeopardy protection is co-extensive with the Fifth Amendment to the federal constitution, our Supreme Court has emphasized that its prior holdings on co-extensivity have been in the context of multiple prosecutions, not multiple punishment. See State v. Dillihay, 127 N.J. 42, 47, 601 A.2d 1149 (1992); State v. Churchdale Leasing, Inc., 115 N.J. 83, 107-08, 557 A.2d 277 (1989); State v. Capak, 271 N.J. Super. 397, 400-403, 638 A.2d 918 (App.Div. 1994).
*157 We can take judicial notice that no issue consumes more of our time than merger, and none is more time consuming or perplexing than the question of merger with respect to possession of a weapon for an unlawful purpose and a substantive offense committed with that weapon. See e.g., State v. Wilson, 128 N.J. 233, 237, 247, 607 A.2d 1289 (1992); State v. Truglia, supra, 97 N.J. at 521, 480 A.2d 912; State v. Nutter, 258 N.J. Super. 41, 45-46, 59, 609 A.2d 65 (App.Div. 1992); State v. Russo, 243 N.J. Super. 383, 412, 579 A.2d 834 (App.Div. 1990); State v. Jones, 213 N.J. Super. 562, 568-70, 517 A.2d 1219 (App.Div. 1986); State v. Johnson, 203 N.J. Super. 127, 136, 495 A.2d 1367 (App.Div.), certif. denied 102 N.J. 312, 508 A.2d 195 (1985). There is the related question of the impact of a concurrent, as opposed to a consecutive, sentence (State v. Bowens, 108 N.J. 622, 638-39, 532 A.2d 215 (1987)), although the mere fact a concurrent sentence is imposed does not avoid the necessity of reviewing that conviction. State v. Lewis, 93 N.J. Super. 212, 213, 225 A.2d 582 (App.Div. 1966) (on remand from the Supreme Court), cert. denied 386 U.S. 986, 87 S.Ct. 1297, 18 L.Ed.2d 238 (1967).
In State v. Williams, 213 N.J. Super. 30, 35, 516 A.2d 265 (App.Div. 1986), certif. denied 107 N.J. 104, 526 A.2d 177 (1987), we endeavored to announce a workable test for deciding whether convictions for possession of a weapon for an unlawful purpose should merge with the substantive offense. We held that to avoid merger four factors must be present:
(1) the defendant must have been charged in the indictment with possession of the weapon with a broader unlawful purpose, either generally or specifically, than using the weapon to kill or assault the victim of the greater offense, (2) the evidence must support a finding that the defendant had a broader unlawful purpose, (3) the judge must have instructed the jury of the difference between possession with the specific unlawful purpose of using the weapon against the victim of the greater offense and a broader unlawful purpose and (4) the verdict must express the jury's conclusion that the defendant had a broader unlawful purpose.
 [State v. Williams, supra, 213 N.J. Super. at 36,
 516 A.2d 265.]
We further stated that in order to prevent merger,
a judge should ask the jury to determine by separate verdicts whether the possession was solely with the specific unlawful purpose to use the weapon against the victim of the greater offense or with a broader unlawful purpose.
[Id. at 37, 516 A.2d 265.]
*158 While there have been numerous cases since Williams, including State v. Wilson, supra, in the Supreme Court, and many opinions of this court in which the absence of a special verdict was not dispositive, we hold that in the absence of a special verdict, authorized by R. 3:19-1(b), by which the jury finds that the unlawful purpose is broader than the substantive offense or offenses on which defendant is convicted,[10] the possession of a weapon with an unlawful purpose conviction must merge into the substantive offense.
Two reasons have been advanced over the years to justify non-merger. First, the State contends that the number of convictions is significant for the release determination by the Parole Board, and, second, that the number of convictions may be significant in the future at the time of sentencing if defendant is convicted of another offense. These factors simply do not apply when defendant is sentenced to the custody of the Department of Corrections for thirty or more "real" years.[11] Moreover, even if defendant is convicted again, the number of convictions resulting in sentencing at a single prior occasion is never relevant for purposes of consideration of a discretionary extended term for a later offense. See N.J.S.A. 2C:44-3a. In fact, the able Deputy Attorney General who argued this case for the State acknowledged *159 that merger or non-merger of count eight has absolutely no practical impact in this case. That being so, we need not comb the nine days of trial transcripts in an effort to decide if there may have been an unlawful purpose on the day alleged in count eight beyond the murder for which defendant was convicted. Here the murder was the only crime of which defendant remained convicted for the date of the offense in question. Accordingly, we hold that count eight shall merge into count six.
The conviction on count eight is vacated. The judgment in all other respects is affirmed.
NOTES
[1] The indictment superseded a prior indictment which embodied only the March 15, 1989 offenses. Among his pretrial motions, defendant moved to dismiss the superseding indictment or sever certain counts thereof because they were "unrelated" and because the joinder was attempted by the prosecutor to secure evidence through defendant's wife which would otherwise be admissible only on charges with respect to which she was the victim.
[2] The verdict and verdict sheet reflect "not guilty" verdicts on the lesser-included charges of aggravated, reckless and passion/provocation manslaughter on the murder count. It appears in context that these decisions were noted in light of the jury's finding that defendant was guilty of the greatest offense. Defendant does not argue otherwise before us.
[3] Ms. Lado also spoke with defense counsel and her investigator.
[4] Evid.R. 55 governed at the time of trial but has been replaced by N.J.R.E. 404(b).
[5] The motion judge also declined to sever counts nine, ten and eleven from the murder charged in count six, but defendant does not contest that ruling before us. Count eleven charged defendant's brother with hindering apprehension, but he was not tried with defendant.
[6] Defendant relies on Evid.R. 28. He apparently accepts the view that the pretrial divorce precluded any objection under Evid.R. 23(2) to her testimony generally. Biunno, supra, comment 1 to Evid.R. 28.
[7] L. 1992, c. 142, also amended Evid.R. 23(2), so as to permit a person to consent to testify against his or her spouse without the consent of the other.
[8] The fact that the prosecutor in his opening referred to a statement not supplied in discovery is not dispositive. The particular comment which gave rise to a motion for mistrial, and which the judge told the jury was not evidence, was never the subject of testimony. We add that the record presented to us does not detail what was provided in discovery and what may have been admitted without prior presentation to the defense. In order to assert a discovery rule violation, a better record must be presented.
[9] Since there is no cross-appeal on this merger, we do not address it.
[10] This is not a special interrogatory prohibited by State v. Simon, 79 N.J. 191, 398 A.2d 861 (1979). The jury cannot be asked to identify the unlawful purpose or for specific fact-finding, but a special verdict is acceptable. See also State v. Hardison, 99 N.J. 379, 389-391, 492 A.2d 1009 (1985). While R. 3:19-1(b) was adopted after enactment of the Code of Criminal Justice essentially to clarify which degree of offense the jury found applicable, we see no problem with its use in this context, provided that the question addressed to the jury is limited to an inquiry regarding whether the purpose was or was not limited to the other offense or offenses of which defendant was convicted. See Report Criminal Practice Committee, 107 N.J.L.J. 441, 447-48 (1981). See also State v. Williams, supra; State v. McAllister, 211 N.J. Super. 355, 362-67, 511 A.2d 1216 (App.Div. 1986).
[11] In fact, here the sentence for possession with an unlawful purpose must be fully served before the parole ineligibility term on the murder expires.