48 A.3d 1059

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT AND CROSS–APPELLANT, v. NORMAN JACKSON, DEFEN-DANT–APPELLANT AND CROSS–RESPONDENT.

Argued March 13, 2012—Decided August 13, 2012.

398

*Marcia H. Blum,* Assistant Deputy Public Defender, argued the cause for appellant and cross-respondent (*Joseph E. Krakora,* Public Defender, attorney).

*Christopher W. Hsieh,* Senior Assistant Prosecutor, argued the cause for respondent and cross-appellant (*Camelia M. Valdes,* Passaic County Prosecutor, attorney; *Mr. Hsieh* and *Steven E. Braun,* Chief Assistant Prosecutor, of counsel and on the briefs).

Justice PATTERSON delivered the opinion of the Court.

Stopped at a traffic light during an evening shift, taxi driver Murul Chowdhury was accosted by an uninvited passenger, defendant Norman Jackson. Defendant entered Chowdhury's taxi through the front passenger door, requested a ride, pointed a gun at the driver, and demanded the driver's money. Chowdhury complied, handing over cash and his wallet. Following defendant's orders, Chowdhury drove approximately eight-tenths of a mile with defendant threatening him with a gun. Defendant departed the vehicle without injuring the driver.

Defendant was swiftly arrested. No weapon was found on defendant during an initial pat-down search at the scene of his arrest, and unbeknownst to the arresting officers, defendant was still armed when he was transported to Paterson police headquarters in a police vehicle. At police headquarters, Officer Wayne

Bizzaro attempted to conduct a more thorough search of defendant, triggering an altercation that injured defendant and revealing a gun concealed in defendant's underwear. Later that night, Officer Bizzaro drafted a false report that did not reveal the officers' failure to locate defendant's gun at the scene of his arrest. The officer then filed an accurate report of the circumstances of defendant's arrest. He was later subject to administrative discipline for his fabricated initial report.

Before a grand jury, Officer Bizzaro testified falsely based on his initial fabricated report of defendant's arrest, which prompted the State to dismiss the indictment. He later accurately described the arrest before a second grand jury, which indicted defendant for first-degree robbery, *N.J.S.A.* 2C:15–1, second-degree kidnapping, *N.J.S.A.* 2C:13–1(b)(1) or (2), and five other charges. Defendant filed a civil suit against Officer Bizzaro for damages allegedly sustained by virtue of the altercation between them and the police officer's false grand jury testimony.

Defendant was tried and convicted by a jury on eight counts of the indictment, including first-degree robbery and second-degree kidnapping. On appeal, defendant challenged his conviction on several grounds, two of which are in contention here. First, defendant contended that the trial court should have granted his motion for a mistrial in the wake of prosecutorial comments about defendant's civil suit and the administrative discipline imposed upon Officer Bizzaro. Second, defendant claimed that the second-degree kidnapping conviction was unsupported by the evidence presented at trial, because the victim was neither transported a "substantial distance" nor confined for a "substantial period," as required by *N.J.S.A.* 2C:13–1(b). The Appellate Division panel affirmed defendant's conviction and sentence in all but one respect; it agreed with defendant that the evidence did not support his conviction for kidnapping, and vacated his conviction for that offense. This Court granted the parties' cross-petitions for certification regarding those two issues.

We affirm in part and reverse in part the Appellate Division panel's decision. We concur with the panel that the trial court properly exercised its discretion when it denied defendant's motion for a mistrial. The prosecutor's comments during summation inappropriately touched upon two matters extraneous to the issues considered by the jury—defendant's civil suit against Officer Bizzaro and the officer's administrative discipline. However, those comments referred to evidence that had been admitted during the course of the trial without a defense objection, responded to a defense argument and in one case, concerned evidence that had been elicited by the defense counsel. Moreover, the trial court instructed the jury not to consider other criminal or civil proceedings in its deliberations. Accordingly, we concur with the Appellate Division panel's judgment affirming the trial court's decision to deny a mistrial.

We reverse the panel's determination regarding the trial evidence supporting defendant's kidnapping conviction. We hold that the circumstances of this case support a factfinder's determination that defendant transported Chowdhury a "substantial distance" from the site of their initial encounter, or, in the alternative, that defendant unlawfully confined Chowdhury for a "substantial period," within the meaning of *N.J.S.A.* 2C:13–1(b). By forcing Chowdhury to drive through city streets at gunpoint, constrained from abandoning his taxi to summon assistance, defendant kept his victim in a state of isolation and vulnerability that was not merely incidental to the crime of armed robbery. Defendant imposed upon his victim a risk of harm that exceeded the risk of the robbery alone. Accordingly, the jury's determination that defendant violated *N.J.S.A.* 2C:13–1(b) found sufficient support in the trial evidence, and defendant's conviction for second-degree kidnapping is reinstated.

I.

At about 8:30 p.m. on January 14, 2005, Chowdhury was driving

his taxi through Paterson to pick up a customer.[1]  He stopped at a light on River Street, and noticed defendant walking near the taxi. Without warning, defendant entered the taxi through the right front door, sat in the passenger seat, and requested a ride to Broadway, one of Paterson's major roads, several blocks south of the taxi's location.  Chowdhury, citing his customer waiting for him, offered to take defendant to Broadway after picking up his customer, but defendant demanded twice more that he be driven to Broadway immediately.  After the two men briefly argued, defendant pulled out a gun, cautioning Chowdhury to "look at this mother f* * * *r."  Defendant pointed the gun at Chowdhury's chest, and the driver acceded to his passenger's demands and drove in the direction of Broadway:

> PROSECUTOR: When did you start driving?  Was it before he pulled the gun ou[t], or after he pulled the gun out?
> CHOWDHURY: After.
> PROSECUTOR: Why did you start to drive?
> CHOWDHURY: Because he demanded to go to Broadway.

With his gun pointed at Chowdhury, defendant asked for money.[2] Chowdhury reached into his pocket and gave defendant sixty-five dollars, the fares he had collected that evening.  Defendant then demanded Chowdhury's wallet and Chowdhury complied:

> I give it to him, my wallet.  He took the money.  He give me my wallet back. Then he ask for it again, the wallet.  Then he look everything, give it to me back. Then he say, oh, f* * * it.  This wallet, I have my fingerprint in there.  So, I—from my breath, and I like, wipe.  Then he said, okay, put in your pocket.  Then I put in my pocket.

Having taken the money, defendant then ordered Chowdhury to drive him through Paterson:

> Then he say, okay, start driving.  Still driving, then he said, okay, take me to Broadway.  And I driving in Straight Street and make a left in like Broadway and

---

[1] Because defendant exercised his right not to testify at trial, the record's only account of the incident is that presented by Chowdhury, a prosecution witness, in his trial testimony.

[2] The precise sequence of events is not clear from the record.  Chowdhury did not specify whether he started driving before defendant demanded the money.

Straight Street. Then when I cross the like, [ ] Street, then he says, okay, pull up the car. Then I pull up. Then he say, okay. Don't drive, just park.

Chowdhury pulled the car over, and defendant left the car, instructing Chowdhury to drive away slowly. Based on the start and end locations testified to by Chowdhury, the total distance driven by Chowdhury with defendant in his taxi was .8 miles, representing approximately fifteen city blocks.

Almost immediately, Chowdhury flagged down a police officer, who requested backup. Chowdhury and the officer followed defendant into a park, where they were met by Officer Bizzaro and other police officers, and the group found defendant. After a brief struggle, the officers handcuffed and arrested defendant. They conducted a pat-down search which revealed the money taken from Chowdhury, but no gun. The officers searched the park for the weapon, turning up nothing. At the scene of the arrest, Chowdhury identified defendant as the individual who had threatened and robbed him at gunpoint.

The officers then transported defendant to Paterson police headquarters, and Officer Bizzaro and another officer brought him to an interview room. Officer Bizzaro commenced a more thorough search of defendant. When the officer searched defendant's groin area, defendant resisted the search, and the two punched one another and wrestled. Officer Bizzaro hit defendant with a metal police baton, and when a second officer entered the room, she assisted Officer Bizzaro in subduing defendant. With defendant handcuffed, the officers searched him and found in his underwear a "small caliber silver semi-automatic handgun" that was missing the slide that delivers bullets into the gun's chamber. Following the search, defendant was transported to a hospital, where he received stitches for a cut above his left eye that he had sustained during his altercation with Officer Bizzaro.

Later that night, Officer Bizzaro prepared and filed a report of the incident that contained a material misstatement of the evening's events: it falsely stated that the officers found defendant's weapon at the scene of his arrest. He later testified that he

realized that his "negligence" in conducting an incomplete search at the scene of defendant's arrest could have endangered officers' lives, and had resulted in the police transportation of a suspect carrying a gun, albeit a disabled gun. Noting that "there's no excuse," Officer Bizzaro testified that he "typed up the—the report stating that I found the weapon on the scene [of the arrest] when, in fact, I did not."

According to Officer Bizzaro, after he typed his false report, he noted that he had put his partner's "name on the bottom of a report that wasn't true." He testified that he prepared a second report later that night that made clear that defendant's weapon was not recovered until after he and defendant had scuffled at police headquarters. According to his testimony, he left the first, false report on the desk in the Detective Bureau, and gave the second, correct report to his supervisor. He did not alert his superiors to the discrepancy between his two reports, but later testified that he assumed that his initial, false report regarding the recovery of defendant's weapon had been destroyed because he "never turned it in." In fact, both reports remained on file as the State's case against defendant proceeded.

In April 2005, the Passaic County Prosecutor's Office presented the State's case to a grand jury. Called to testify before the grand jury, Officer Bizzaro was questioned by an assistant prosecutor who, he soon realized, had framed her questions based upon his first report containing false information. She asked Officer Bizzaro what he had recovered in his initial search of defendant in the Paterson park. Notwithstanding the fact that his initial search of defendant at the park had revealed only money, Officer Bizzaro testified falsely before the grand jury that he had found a weapon on defendant at the scene of his arrest in the park. Although he "realized [that the prosecutor] was asking me questions off the wrong report," Officer Bizzaro "made a bad judgment call and didn't correct it."

The grand jury returned an indictment, charging defendant with multiple offenses, including first-degree robbery, *N.J.S.A.*

2C:15–1, and second-degree kidnapping, *N.J.S.A.* 2C:13–1(b)(1). However, the Passaic County Prosecutor's Office subsequently learned of Officer Bizzaro's initial fraudulent report and false grand jury testimony, and dismissed the indictment against defendant. The trial court ordered that all internal affairs reports and investigations be turned over to defense counsel. The Paterson Police Department administratively disciplined Officer Bizzaro for his conduct with a five-day suspension. Defendant filed a civil suit against Officer Bizzaro for damages alleged to have been caused by the officer's altercation with defendant and his false testimony before the grand jury.

On January 2, 2007, a second grand jury returned a new indictment, including the same charges as the original indictment. In this second grand jury proceeding, Officer Bizzaro testified as to the events recounted in his second, accurate police report. Defendant moved to dismiss the indictment, citing Officer Bizzaro's prior official misconduct and false grand jury testimony. He also sought the recusal of the Passaic County Prosecutor's Office, and moved to suppress the slide that had been a component of the gun found on defendant during the officers' second search. The trial judge denied defendant's motions, but severed some of the charges set forth in the second indictment that did not relate to defendant's encounter with Chowdhury.

## II.

In August 2007, defendant was tried before a jury on seven counts of the second indictment: first-degree robbery, *N.J.S.A.* 2C:15–1; fourth-degree aggravated assault with a firearm, *N.J.S.A.* 2C:12–1(b)(4); second-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(a); third-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(b); second-degree kidnapping, *N.J.S.A.* 2C:13–1(b)(1) or (2); third-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(5)(a); and third-degree resisting arrest, *N.J.S.A.* 2C:29–2(a)(3).

During the five-day trial, the prosecution presented the testimony of Chowdhury, Officer Bizzaro and other current and former Paterson police officers. During the testimony of the State's witnesses, there were several references to extraneous proceedings—litigation filed by defendant and administrative discipline pertaining to defendant's altercations with the officers and Officer Bizzaro's false grand jury testimony. The prosecutor alluded to those references during his summation, and defendant moved for a mistrial. The trial court denied the motion for a mistrial, but instructed the jury regarding the references in the testimony to extraneous legal proceedings. Defendant declined to testify, and the defense rested without calling witnesses. Defendant did not, at any time in the course of the trial, move for a judgment of acquittal.

On August 9, 2007, the jury convicted defendant of first-degree robbery, fourth-degree aggravated assault with a firearm, second-degree possession of a weapon for an unlawful purpose, third-degree unlawful possession of a weapon, second-degree kidnapping, third-degree aggravated assault of a law enforcement officer with no finding that the officer suffered bodily injury, and third-degree resisting arrest. The trial court then instructed the jury on the offense of second-degree certain persons not to have weapons, *N.J.S.A.* 2C:39–7, and the jury convicted defendant of that crime.

Defendant moved for a new trial. After denying the motion, the trial court sentenced defendant to an extended term of thirty years' incarceration for the first-degree robbery charge with a period of eighty-five percent parole ineligibility and a five-year term of parole supervision under the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2. For the second-degree kidnapping charge, the trial court sentenced defendant to ten years in prison with an eighty-five percent period of parole ineligibility pursuant to NERA, with the sentence for the kidnapping offense to be served concurrently with defendant's other prison terms. After merging the appropriate offenses into the first-degree robbery

charge, the trial court sentenced defendant on the remaining counts to terms of incarceration to run concurrently with the thirty-year term imposed for the armed robbery.

Defendant appealed his conviction, raising six claims of error by the trial court. An Appellate Division panel reversed defendant's conviction on the kidnapping count, but otherwise affirmed his conviction. The panel considered defendant's claim of prosecutorial misconduct, finding several statements by the prosecutor in summation to be improper, but concluding that these statements had not endangered defendant's right to a fair trial. However, the panel deemed the trial evidence insufficient to support the jury's verdict on the charge of second-degree kidnapping. Citing *State v. Masino*, 94 *N.J.* 436, 466 *A.*2d 955 (1983), and *State v. La France*, 117 *N.J.* 583, 569 *A.*2d 1308 (1990), the Appellate Division panel held that defendant's confinement of Chowdhury in his moving taxi did not expose the victim to enhanced risk beyond the risk that was inherent in the armed robbery. Accordingly, the panel vacated defendant's conviction for second-degree kidnapping and remanded for the entry of an amended judgment of conviction.

Defendant filed a petition for certification and the State crosspetitioned. This Court granted defendant's petition limited to the issue of whether the trial court erred in denying defendant's motion for a mistrial based on the prosecutor's comments during summation, and granted the State's cross-petition, which challenged the Appellate Division panel's reversal of defendant's kidnapping conviction. *State v. Jackson*, 207 *N.J.* 228, 23 *A.*3d 935 (2011).

### III.

Defendant asserts that the prosecutor's comments during summation regarding administrative proceedings and defendant's civil litigation justified a mistrial. He challenges the trial court's decision to issue a corrective charge instead of declaring a mistrial, contending that the prosecutor's summation denied defendant

his right to a fair trial, and constituted reversible error. The State defends the prosecutor's comments as premised upon trial evidence that was admitted without objection by the defense, and contends that those comments constituted a proper response to the defense's diversionary attack on the integrity of Officer Bizzaro. The State argues that the trial judge's cautionary instruction ensured that defendant had a fair trial.

In support of its cross-petition, the State contends that the trial evidence amply supported defendant's conviction for kidnapping. It contends that the Appellate Division panel improperly focused on the distance traveled and time elapsed during Chowdhury's confinement, instead of the increased risk of harm posed by defendant when he forced the victim to drive his car under a threat of violence. Defendant contends that his conduct did not satisfy the statutory elements of *N.J.S.A.* 2C:13–1(b). He claims that because he never isolated the victim, removed him from streets with which he was familiar or kept his location a secret, he did not commit the offense of kidnapping. He also contends that the risk of harm to the victim was posed by the armed robbery, and that defendant's confinement of Chowdhury to his car was incidental to the robbery. Accordingly, defendant argues that the Appellate Division panel properly vacated the conviction for kidnapping.

## IV.

We review the trial court's denial of defendant's motion for a mistrial in accordance with a deferential standard of review. "[A]n appellate court will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice." *State v. Harvey*, 151 *N.J.* 117, 205, 699 *A.*2d 596 (1997), *cert. denied*, 528 *U.S.* 1085, 120 *S.Ct.* 811, 145 *L.Ed.*2d 683 (2000).

Defendant's allegation of prosecutorial misconduct requires that we determine whether the trial court violated his right to a fair trial. We impose on prosecutors "certain duties consis-

tent with their sovereign obligation to ensure that justice shall be done in all criminal prosecutions." *Cone v. Bell,* 556 *U.S.* 449, 451, 129 *S.Ct.* 1769, 1772, 173 *L.Ed.*2d 701, 707 (2009) (quotation omitted); *see also Berger v. United States,* 295 *U.S.* 78, 88, 55 *S.Ct.* 629, 633, 79 *L.Ed.* 1314, 1321 (1935). A prosecutor must "conscientiously and ethically undertak[e] the difficult task of maintaining the precarious balance between promoting justice and achieving a conviction," ensuring that at all times his or her "remarks and actions [are] consistent with his or her duty to ensure that justice is achieved." *State v. Williams,* 113 *N.J.* 393, 447–48, 550 *A.*2d 1172 (1988) (citing *State v. Ramseur,* 106 *N.J.* 123, 323, 524 *A.*2d 188 (1987); *State v. Biegenwald,* 106 *N.J.* 13, 39, 524 *A.*2d 130 (1987)).

■ A finding of prosecutorial misconduct prejudicing a defendant's right to a fair trial may be based upon references to matters extraneous to the evidence. *See State v. Rose,* 112 *N.J.* 454, 521, 548 *A.*2d 1058 (1988). In *State v. Frost,* 158 *N.J.* 76, 85, 727 *A.*2d 1 (1999), the prosecutor bolstered the testifying police officers' credibility by suggesting that they "would not lie because of the 'magnitude' of charges that could be brought against them." The Court noted that our cases "have consistently held that such statements by a prosecutor about a police officer's credibility are wholly inappropriate." *Ibid.* (citations omitted). Similarly, in *State v. Muniz,* 228 *N.J.Super.* 492, 500, 550 *A.*2d 487 (App.Div. 1988), *rev'd on other grounds,* 118 *N.J.* 319, 571 *A.*2d 948 (1990), an Appellate Division panel admonished the prosecutor not to repeat, on retrial of a death by auto case, a portion of the summation in the first trial in which the prosecutor suggested that the victims' civil suit against the defendant would yield only "pennies," and that a guilty verdict was necessary to vindicate the victim. *See also State v. Negron,* 355 *N.J.Super.* 556, 573, 578, 810 *A.*2d 1152 (App.Div.2002).

■ Notwithstanding the high standard to which a prosecutor is held as he or she gives an opening statement or summation, "not every deviation from the legal prescriptions governing prosecuto-

rial conduct" requires reversal. *Williams, supra,* 113 *N.J.* at 452, 550 *A.*2d 1172. The misconduct does not warrant reversal unless it is "so egregious that it deprived the defendant of a fair trial." *Frost, supra,* 158 *N.J.* at 83, 727 *A.*2d 1 (citing *Ramseur, supra,* 106 *N.J.* at 322, 524 *A.*2d 188; *State v. Siciliano,* 21 *N.J.* 249, 262, 121 *A.*2d 490 (1956)). As we held in *State v. Jenewicz,* reviewing an allegation that a prosecutor had improperly disparaged a witness in summation, the Court must discern the " 'fine line that separates forceful from impermissible closing argument.' " 193 *N.J.* 440, 470–71, 940 *A.*2d 269 (2008) (quoting *State v. Nelson,* 173 *N.J.* 417, 460, 803 *A.*2d 1 (2002)).

◼ Prosecutorial comments are deemed to have violated the defendant's right to a fair trial when they "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Koedatich,* 112 *N.J.* 225, 338, 548 *A.*2d 939 (1988) (quotation omitted), *cert. denied,* 488 *U.S.* 1017, 109 *S.Ct.* 813, 102 *L.Ed.*2d 803 (1989). Our task is to consider the "fair import" of the State's summation in its entirety. *State v. Wakefield,* 190 *N.J.* 397, 457, 921 *A.*2d 954 (2007), *cert. denied,* 552 *U.S.* 1146, 128 *S.Ct.* 1074, 169 *L.Ed.*2d 817 (2008); *see also State v. Roach,* 146 *N.J.* 208, 219, 680 *A.*2d 634 (only those comments that have "palpable impact" will warrant reversal), *cert. denied,* 519 *U.S.* 1021, 117 *S.Ct.* 540, 136 *L.Ed.*2d 424 (1996). A reviewing court considers "the tenor of the trial and the responsiveness of counsel and the court to the improprieties when they occurred." *State v. Timmendequas,* 161 *N.J.* 515, 575, 737 *A.*2d 55 (1999), *cert. denied,* 534 *U.S.* 858, 122 *S.Ct.* 136, 151 *L.Ed.*2d 89 (2001). Three factors guide the Court's assessment of the impact of improper prosecutorial remarks: "(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." *State v. Smith,* 167 *N.J.* 158, 182, 770 *A.*2d 255 (2001).

■ Here, defendant alleges prosecutorial misconduct centering upon legal and administrative proceedings that arose from Officer Bizzaro's handling of the case, but were not relevant to the issues before the jury in defendant's criminal case. In its cross-examination of the State's witnesses, the defense focused on Officer Bizzaro's misconduct. Defendant suggested that police officers misidentified defendant as the perpetrator, that the police work was so flawed that it could not support a conviction, and that the officers planted the gun on defendant.

Three of the State's witnesses testified about civil and administrative proceedings that were extraneous to the criminal charges. First, Sergeant Angel Perales testified on the State's direct examination, without objection from defendant, that defendant had filed a complaint against him alleging simple assault based on the officer's alleged punching and kicking of defendant, and that a court had noted "probable cause found" on defendant's complaint.

Second, Officer Bizzaro testified about his altercation with and search of defendant, in the Paterson Police Department interview room, and admitted to his false report and testimony before the first grand jury. After the prosecutor inquired about the Paterson Police Department's administrative proceedings against Officer Bizzaro, defendant made, and then withdrew, an objection premised on relevancy grounds. The prosecutor's questioning of Officer Bizzaro then shifted from the officer's administrative punishment to defendant's civil action against him:

PROSECUTOR: What was your punishment?

OFFICER BIZZARO: Five days suspension.

PROSECUTOR: And are you being sued?

OFFICER BIZZARO: Yes.

PROSECUTOR: By who?

OFFICER BIZZARO: The defendant.

PROSECUTOR: For what?

OFFICER BIZZARO: A million dollars.

Defense counsel did not renew his objection, and this testimony was admitted.

Finally, in testimony elicited by defendant, not the State, Officer Bizzaro's partner, Officer Anne Marie Mattina, touched on civil litigation filed by defendant. Asked about her knowledge of injuries sustained by defendant in his struggle against the officers in the Paterson Police Department interview room, Officer Mattina disclaimed familiarity with those injuries, noting that she "did receive a subpoena for—that I was getting sued from [defendant]." Defense counsel did not move to strike Officer Mattina's answer as unresponsive.

The challenged portion of the State's summation occurred near the close of the prosecutor's remarks. The prosecutor disputed defendant's suggestion that Officer Bizzaro had planted the gun on defendant, but commented that the officer "obviously chose the wrong path" when he lied about the officers' recovery of the gun, "not to plant something, not to frame an innocent man, but not to get in trouble." He then ended his summation by citing the assault charge against Sergeant Perales, the administrative discipline imposed upon Officer Bizzaro, and defendant's civil litigation:

One day,—you know, this case has another component to it that's not before you. Sergeant [Perales] was charged with simple assault. One day, he'll have to deal with that Complaint. Officer [Bizzaro] lost a week's pay. He earned that at least. He's also being sued for a million dollars. Now, that's another issue. Maybe some of you will feel he deserves to be bankrupted for the rest of his life for what he did. And maybe some of you won't.

He wanted—he wants somebody else's money that day. He was having a good day when he was able to get it, that $78. And then he had a bad day when Officer [Perales] was right there and when the other officers caught him as he got out of the cab. Then the day got better because Officer [Bizzaro] chose to lie in a report. And now he wants to be a millionaire. That's all for another day.

Your call here today is to say, "Are we okay with what he did? Are we okay with armed robbery?" And I hope you're not.

Thank you.

Defense counsel promptly sought a mistrial or, in the alternative, a limiting instruction. He argued that the jury had been misled into concluding that by acquitting defendant, he would be "rewarded and become a millionaire." The trial court denied the motion for a mistrial, noting that the evidence upon which the prosecutor had premised his comments had been admitted without

objection, and that defendant's credibility was not in issue because he did not testify. Ruling on defendant's renewed motion for a mistrial the following day, the trial court commented that the prosecutor's statements had been prompted by the defense's understandable focus on "what could reasonably be argued as amateurish police work" in the case. However, the trial court agreed to give a limiting instruction, rejecting language proposed by the defense but charging the jury as follows:

> Ladies and gentlemen, during the trial, you have heard testimony about other lawsuits, criminal and civil, related to this case. Those cases are separate from this case, of course. Each matter must be decided on its own individual merits. And the worth of the claims and allegations made in those other lawsuits will be the subject of separate proceedings in each of those matters. You must not consider that the verdict which you return in this case will in any way impact on any other case.

The jury was thus informed that its verdict in the case before it was unrelated to the outcome of any civil litigation or administrative process involving the officers.

▇▇▇▇ The Appellate Division panel commented that the prosecutor's "outrageous statement that the officer might be 'bankrupted for life' " had "no basis in the evidence, [and] sought the jury's application of an impermissible basis for defendant's conviction." We concur with the panel's conclusion that the comments were improper and invoked proceedings extraneous to the case at issue. Absent agreement of the parties or special circumstances requiring that related civil litigation or administrative discipline be explained in a criminal trial, such extraneous proceedings should generally be excluded from a prosecutor's comments to the jury. *Cf. Frost, supra,* 158 *N.J.* at 85, 727 *A.*2d 1; *Rose, supra,* 112 *N.J.* at 521, 548 *A.*2d 1058. Such comments could, in some settings, cause jury confusion that cannot be resolved by a limiting instruction, warranting a mistrial.

▇▇▇▇ We further concur with the panel that defendant was afforded a fair trial notwithstanding the comments in the closing moments of the prosecutor's summation. The prosecutor's statements were fully grounded in evidence—although extraneous—

that was admitted without objection. They were responsive to a key defense theme, that the police officers were motivated to misidentify defendant and had planted a gun on him. Moreover, given the context of the prosecutor's comments, it is extremely unlikely that those comments could have affected the integrity of the jury verdict. The prosecutor's comments could not have altered the outcome of defendant's trial, unless they prompted jurors—who had rejected the State's identification evidence—to convict defendant in order to forestall a civil judgment against Officer Bizzaro.

Defendant's argument is particularly speculative given that the jury was clearly advised that its decision had no bearing on the civil litigation. The summation itself included two comments noting that the issue of civil liability was not before the jury. Most significantly, the trial court directly addressed the issue with the jury, delivering a timely and effective limiting instruction.

This trial court's denial of defendant's motion for a mistrial did not constitute "an abuse of discretion that results in a manifest injustice." *See Harvey, supra,* 151 *N.J.* at 205, 699 *A.*2d 596. Accordingly, we concur with the Appellate Division's decision affirming the trial court's ruling on this issue.

## V.

The State challenges the Appellate Division's decision vacating defendant's conviction for second-degree kidnapping in violation of *N.J.S.A.* 2C:13–1(b). The conviction should not be disturbed on appeal "unless it clearly appears that there was a miscarriage of justice under the law." *R.* 2:10–1; *see also R.* 3:20–1 ("The trial judge shall not ... set aside the verdict of the jury as against the weight of the evidence unless, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a manifest denial of justice under the law."). There is no "miscarriage of justice" when " 'any trier of fact could rationally have found beyond a reasonable doubt that the essential elements of

the crime were present.'" *State v. Afanador*, 134 *N.J.* 162, 178, 631 *A.*2d 946 (1993) (quoting *State v. Carter*, 91 *N.J.* 86, 96, 449 *A.*2d 1280 (1982)); *see also Smith, supra*, 262 *N.J.Super.* at 512, 621 *A.*2d 493. Thus, we review defendant's conviction for kidnapping under an extraordinarily lenient standard of review.

Our law recognizes two forms of kidnapping, only one of which is relevant here. *N.J.S.A.* 2C:13–1(a) addresses holding a victim for ransom, reward or as a hostage, while *N.J.S.A.* 2C:13–1(b) criminalizes "other purposes" or "non-ransom kidnapping":

Holding for other purposes. A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period, with any of the following purposes:

(1) To facilitate commission of any crime or flight thereafter;

(2) To inflict bodily injury on or to terrorize the victim or another; . . . .

[*N.J.S.A.* 2C:13–1(b).]

Subsection d. of the statute further defines "unlawful" removal or confinement to include removal or confinement "accomplished by force, threat or deception." [3]

Thus, in order to convict a defendant of non-ransom kidnapping, the factfinder must conclude, beyond a reasonable doubt, that the defendant either removed the victim "from his place of residence or business, or a substantial distance from the vicinity where he is found," or "unlawfully confine[d] [the victim] for a substantial period." *N.J.S.A.* 2C:13–1(b). Here, we cannot discern whether the jury based its verdict on the victim's removal by a "substantial distance," or his "substantial confinement," and accordingly both elements of non-ransom kidnapping are relevant to appellate review.

---

[3] Although kidnapping is a first-degree crime punishable by fifteen to thirty years' incarceration, it is treated as a second-degree crime, punishable by five to ten years' incarceration, if the defendant "releases the victim unharmed and in a safe place prior to apprehension." *N.J.S.A.* 2C:13–1(c); *N.J.S.A.* 2C:43–6(a)(2). Because defendant released Chowdhury unharmed, he was charged with a crime of the second degree.

We considered the "substantial distance" element of *N.J.S.A.* 2C:13–1(b) in *Masino, supra,* 94 *N.J.* at 445, 466 *A.*2d 955. There, the defendant, whose sexual advances to the victim had been rebuffed, dragged the victim from her car to a pond where he sexually assaulted and beat her. *Id.* at 438, 466 *A.*2d 955. We noted that the "substantial distance" requirement was intended to preclude abusive prosecution, in the form of " 'kidnapping convictions based on trivial changes of location having no bearing on the evil at hand.' " *Id.* at 445, 466 *A.*2d 955 (quoting Model Penal Code § 212.1 Comment (Tent. Draft No. 11, 1960), at 16). We construed the requirement of *N.J.S.A.* 2C:13–1(b) to be distinct from a "linear measurement" of the distance traveled by the victim during his or her confinement. *Ibid.* Instead, we defined a "substantial distance" as one that "isolates the victim and exposes him or her to an increased risk of harm." *Ibid.* In *Masino,* although the "linear" distance between the location where the defendant had abducted the victim and the location where she was found was not long, we held that the evidence supported a jury finding that the defendant moved the victim a "substantial distance." *Id.* at 447, 466 *A.*2d 955. The *Masino* defendant isolated the victim and by removing her clothes, "imped[ed] her ability to follow him from the area and call attention to her plight." *Ibid.*

Following *Masino,* we found that the "substantial distance" element of *N.J.S.A.* 2C:13–1(b) was satisfied, notwithstanding a relatively short distance traveled during the course of the crime, in another sexual assault case, *State v. Brent,* 137 *N.J.* 107, 124–26, 644 *A.*2d 583 (1994). There, the defendant grabbed the victim on the sidewalk and carried her across the street, and after "subduing her with blows to the face ... dragged [her] by her shirt behind the dense woods of an abandoned lot." *Id.* at 124, 644 *A.*2d 583. We noted that "[a]lthough in many instances the movement accompanying a sexual assault may be incidental to the assault and therefore not within the ambit of the kidnapping statute, courts have recognized that movement can constitute a separate danger that substantially increases the risk of harm to

the victim." *Id.* at 125, 644 *A.*2d 583; *see also State v. Purnell,* 394 *N.J.Super.* 28, 53–54, 925 *A.*2d 71 (App.Div.2007) (holding that "substantial distance" requirement was met when defendant dragged victim up an additional flight of stairs to commit sexual assault by virtue of increased risk of harm to victim); *State v. Matarama,* 306 *N.J.Super.* 6, 22, 703 *A.*2d 278 (App.Div.1997) (upholding conviction when victim was "dragged twenty-three feet to the end of her building to a small alley," where "the assailants could more easily attack her without being seen," because "substantial distance" element was satisfied), *certif. denied,* 153 *N.J.* 50, 707 *A.*2d 154 (1998). Thus, the "substantial distance" element requires analysis of the additional risk imposed on the victim, over and above the risk imposed by a separate crime, and the isolation experienced by the victim because of the defendant's actions.

"Substantial confinement" for purposes of *N.J.S.A.* 2C:13–1(b) was addressed by this Court in *La France, supra,* 117 *N.J.* at 591–94, 569 *A.*2d 1308. There, the "confinement" occurred when the defendant broke into the home of the victim husband and wife "with the intent to take money," tied up the husband, dragged the wife down a hallway and committed an aggravated sexual assault on her. *La France, supra,* 117 *N.J.* at 591–92, 569 *A.*2d 1308. Reiterating the concern expressed in *Masino,* the Court noted that absent careful constraints on the prosecution of kidnapping offenses, the State might misuse kidnapping as a " 'bonus count' in an indictment." *Id.* at 591, 569 *A.*2d 1308 (quoting *Masino, supra,* 94 *N.J.* at 447–48, 466 *A.*2d 955). Citing *Masino* 's approach to the issue of "substantial distance," we held that

> one is confined for a substantial period if that confinement "is criminally significant in the sense of being more than merely incidental to the underlying crime," and that determination is made with reference not only to the duration of the confinement, but also to the "enhanced risk of harm resulting from the [confinement] and isolation of the victim [or others]. That enhanced risk must not be trivial."
>
> [*Id.* at 594, 569 *A.*2d 1308 (quoting *Masino, supra,* 94 *N.J.* at 447, 466 *A.*2d 955).]

Finding that the jury instruction sufficiently explained the statutory elements, we reinstated the defendant's kidnapping conviction. *Id.* at 594–95, 569 *A.*2d 1308.

This Court and the Appellate Division have construed the "substantial confinement" element of *N.J.S.A.* 2C:13–1(b) when the alleged kidnapping took place in conjunction with a crime such as robbery or burglary. In *State v. Hampton*, 61 *N.J.* 250, 275–76, 294 *A*.2d 23 (1972), after breaking into the victim's home, the defendant forced the victim to "leave her apartment at gun point and to drive him in her car about the countryside at night for about an hour, frequently threatening her with being shot, and in fact causing her to believe he intended to shoot her to the point where in her fright she did risk death to get out of the car." The Court held that these acts did not constitute "an integral part of the commission of the single crime of breaking and entering," and that "[t]he forcible detention could reasonably be considered a separate event deliberately undertaken and warranting separate prosecution." [4] *Id.* at 276, 294 *A*.2d 23.

An Appellate Division panel undertook a similar analysis in *State v. Bryant*, 217 *N.J.Super.* 72, 524 *A*.2d 1291 (App.Div.), *certif. denied*, 108 *N.J.* 202, 528 *A*.2d 24, *cert. denied*, 484 *U.S.* 978, 108 *S.Ct.* 490, 98 *L.Ed.*2d 488 (1987). There, "elderly victims were bound and gagged for a period sufficient to permit the ransacking of their houses and remained in that condition for 10 minutes in one case and for an unspecified period in another." *Id.* at 81, 524 *A*.2d 1291. Citing *Masino*, the panel held that while the confinement of the victims during the robbery itself, without more, would not constitute a basis for the kidnapping charge, the defendant had extended that confinement to facilitate his escape, thus exposing the victims to additional risk. *Id.* at 80–81, 524 *A*.2d 1291 (citing *Masino, supra*, 94 *N.J.* at 446, 466 *A*.2d 955).

---

[4] New Jersey's current burglary statute, *N.J.S.A.* 2C:18–2, has its roots in *N.J.S.A.* 2A:94–1, which was the breaking and entering statute at issue in Hampton. *N.J.S.A.* 2C:18–2 (Historical and Statutory Notes); *see also* Cannel, *New Jersey Criminal Code Annotated*, comment 2 on *N.J.S.A.* 2C:18–2 (2012) (observing that definition of "burglarious entry" was similar to definition in *N.J.S.A.* 2A:94–1 (quoting comment 2 from 1971 Commentary)).

The precise setting of this case—confinement of the victim in a moving car in conjunction with an armed robbery—has not been previously addressed by the Court. However, in *Brent, supra,* 137 *N.J.* at 121–22, 644 *A.*2d 583, we cited comments by the drafters of the Model Penal Code regarding cases in which the defendant effects the victim's confinement in a moving vehicle. Differentiating between non-ransom kidnapping and the offense of third-degree criminal restraint in violation of *N.J.S.A.* 2C:13–2, we quoted the drafters of the Code:

> "[Criminal restraint] comes into play for substantial removal or confinement that is not accompanied by one of the designated kidnapping purposes. Thus, for example, the actor who uses a gun to force another to drive him somewhere engages in unlawful restraint under circumstances exposing the victim to risk of serious bodily harm. If he does so in order to terrorize the victim or in order to commit or escape from a felony, he may be convicted of kidnapping."
>
> [*Id.* at 122, 644 *A.*2d 583 (quoting *Model Penal Code and Commentaries* § 212.2 cmt. 2 at 240–41 (1985)).]

In *Brent,* we noted that "although the Code 'distinguishes kidnapping from conduct that is merely incidental to the underlying crimes, it does not make kidnapping a "free crime" when it accompanies another violent crime such as rape or robbery.'" *Id.* at 125, 644 *A.*2d 583 (quoting *La France, supra,* 117 *N.J.* at 590, 569 *A.*2d 1308).

█ Analyzing this case in conformance with our prior decisions, we hold that there was sufficient evidence to support the jury verdict with respect to both the "substantial distance" and "substantial confinement" elements of *N.J.S.A.* 2C:13–1(b). Defendant's constraints on his victim went beyond the acts that were necessary to accomplish the armed robbery with which he was separately charged. Defendant did not simply enter the taxi at the stoplight, brandish his weapon, demand and collect money from Chowdhury, and depart the scene, leaving Chowdhury in a position to promptly seek help. Defendant isolated Chowdhury, who was threatened with a gun and in a moving vehicle, thus impeding Chowdhury's ability to obtain assistance. Instead, he repeatedly ordered Chowdhury to drive him to a location blocks away.

Defendant clearly exposed Chowdhury to an enhanced risk of harm. Because defendant remained in the taxi after the robbery was over and insisted that Chowdhury drive him to Broadway, he kept the victim in an isolated and vulnerable position. Defendant, brandishing a gun, forced Chowdhury to operate his taxi for several minutes, through city streets, exposing him to the risk of a serious accident, injury or death by virtue of a desperate attempt to escape, or the danger of a confrontation between defendant and law enforcement. The "linear distance" traveled was considerable, but the increased risk of harm imposed on this victim was greater still.

The same considerations support defendant's conviction under the "substantial confinement" standard of *N.J.S.A.* 2C:13–1(b). The isolation and vulnerability experienced by the victim in this case was not coextensive with the armed robbery. As described at trial, defendant's robbery of the victim—demands for cash and a wallet with which the victim immediately complied—consumed a short span of time. Yet, the victim's peril lasted significantly longer, as he was threatened with a gun and compelled to drive through the city of Paterson. He was thus exposed to a substantially extended confinement and a substantially increased risk.

Although the record does not disclose whether the jury premised its verdict on the kidnapping offense upon the "substantial distance" standard of *N.J.S.A.* 2C:13–1(b) or the statute's "substantial confinement" element, or both, there was ample evidence supporting defendant's conviction. Accordingly, we reverse the judgment of the Appellate Division panel insofar as it reversed defendant's conviction for kidnapping.

VI.

The judgment of the Appellate Division is affirmed in part and reversed in part, and defendant's conviction is reinstated.

*For affirmance in part/reversal in part/reinstatement*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, and PATTERSON—5.

*Not Participating*—Judge WEFING (temporarily assigned).