**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5384-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JONATHAN F. RAMOS-PIEDRAHITA,
a/k/a JONATHAN F. RAMOS-PEDTAHITA,

    Defendant-Appellant.

_____

Argued February 14, 2017 — Decided August 18, 2017

Before Judges Espinosa and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Indictment No 13-
12-1002.

Jaime B. Herrera, Assistant Deputy Public
Defender, argued the cause for appellant
(Joseph E. Krakora, Public Defender, attorney;
Ms. Herrera, of counsel and on the brief).

Kimberly L. Donnelly, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued
the cause for respondent (Grace H. Park,
Acting Union County Prosecutor, attorney;
Meredith L. Balo, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

PER CURIAM

Defendant was convicted of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), and related offenses, arising out of the stabbing of Mauricio Hurtado,[1] whom he did not know, during an altercation outside a bar in the early morning hours of August 4, 2013. He was sentenced to seven years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He appeals his conviction and sentence, presenting the following arguments for our consideration:

> POINT I
>
> DEFENDANT WAS DEPRIVED OF A FAIR TRIAL WHEN THE PROSECUTOR INDICATED DURING HIS OPENING STATEMENT THAT A WITNESS, WHOM HE KNEW COULD NOT BE PRODUCED AT TRIAL, IDENTIFIED DEFENDANT AS THE ASSAILANT. DEFENDANT WAS FURTHER PREJUDICED WHEN THE PROSECUTOR ARGUED IN OPENING AND CLOSING STATEMENTS THAT ANOTHER WITNESS SAW DEFENDANT STAB THE VICTIM, WHEN THE WITNESS TOLD POLICE AND TESTIFIED AT TRIAL THAT HE DID NOT WITNESS THE ATTACK ON THE VICTIM.
>
> POINT II
>
> THIS CASE SHOULD BE REMANDED FOR RESENTENCING, AS THE TRIAL COURT FAILED TO CONSIDER MITIGATING FACTORS SUPPORTED BY THE EVIDENCE, AND IGNORED THE PROSECUTOR'S REQUEST FOR A DOWNGRADE AND THE VICTIM'S PLEA FOR LENIENCY.

---

[1] The transcript identifies the witness as Mauricio Furtado. We have used the name as set forth in the indictment.

The circumstances that led to the stabbing began when Carlos Castano-Garcia, a friend of defendant's, became embroiled in an argument with Jeffrey Martinez, who was dating Hurtado's ex-girlfriend. The men went outside, engaged in some pushing, and returned to the bar. Defendant arrived later and spoke with Castano-Garcia about his altercation with Martinez.

At some point, Castano-Garcia, Hurtado, Martinez, defendant, and a "bunch of people" went back outside the bar and into the adjacent parking lot. According to Castano-Garcia, Martinez tried to fight him, and defendant placed himself between the two men and tried to separate them. While there was "some pushing and shoving," nobody was punched, kicked, or injured other than Hurtado.

Castano-Garcia testified that after about three or four minutes, "[H]urtado was kind of want to fight, too, so [defendant] tried to stop [H]urtado, and [H]urtado, you know, push [defendant] with his lefthand side and he almost fell . . . but he didn't." Hurtado also testified he pushed defendant "a little hard" and defendant stumbled but did not fall to the ground.

Video surveillance footage from the bar shows defendant, Martinez, and an unidentified male then left the group and walked to defendant's red Mazda in the parking lot. Defendant went into his car for two seconds and then began to return to the group.

The two other men grabbed him; defendant broke free of their grip and ran toward the group.

Castano-Garcia testified defendant ran to his car, and then ran back with a knife to Hurtado and stabbed him.

Hurtado testified that, after returning from his car, defendant stabbed him below his left armpit with a blade. Hurtado also stated defendant tried to stab him two more times and was aiming at his chest.

Juan Alvarez, the owner of the bar, testified he observed defendant holding a blade while he and the other men were fighting. He did not state he witnessed the actual stabbing.

After the attack, defendant drove himself and Martinez away from the bar.

In response to a dispatch about the stabbing, Elizabeth Police Officer Jeffrey Cruz and his partner drove to Morris Avenue, where they encountered defendant shortly after 2:00 a.m. Officer Cruz stated defendant was "sweating a little profusely" and "seemed nervous." Defendant originally told the officers his name was "Fabian Ramos," but then presented a form of identification with his real name.

Officer David Haverty was on patrol when he was flagged down by men at the bar. He attended to Hurtado's wound prior to the arrival of an ambulance and then, upon learning of defendant's

4

detention, transported witnesses to the scene to conduct "show-up" identification procedures. Alvarez and Castano-Garcia identified defendant.[2] After the show-ups, defendant was arrested. He told the officers what car he had and where it was parked, and the car was towed to police headquarters that night.

With defendant's consent, Detective Lawrence Smith searched defendant's vehicle and recovered a knife in the front passenger compartment. At trial, Hurtado identified this knife as the one used to stab him. The knife was sent for DNA testing at the Union County Prosecutor's Laboratory. Monica Ghannam, a forensic scientist at the laboratory, testified she tested a bloodstain on the knife and the DNA matched Hurtado's DNA sample.

At around 2:50 a.m. that morning, Hurtado arrived at University Hospital in Newark. He had a stab wound approximately one centimeter long, and the trauma surgeon used one suture to close the wound. Hurtado was kept in the trauma bay for a short period after that to "sober up," and he was discharged at 4:25 a.m. He later identified defendant as the man who stabbed him, selecting his photo from a photo array.

The jury convicted defendant of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count one); third-degree

---

[2] Alvarez later identified a photograph of defendant at the police department.

aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count two); fourth-degree unlawful possession of a weapon (knife), N.J.S.A. 2C:39-5(d) (count three); and third-degree possession of a weapon (knife) for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count four). The trial judge merged courts two, three, and four into count one and sentenced defendant to seven years of incarceration with an eighty-five percent parole disqualifier on count one.

## II.

For the first time on appeal,[3] defendant argues that statements made by the prosecutor in his opening statement and summation regarding identifications of defendant deprived him of a fair trial. "The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves." State v. Robinson, 200 N.J. 1, 19 (2009). Because there were no objections to these comments at trial, our review is limited to "a search for plain error." State v. Nesbitt, 185 N.J. 504, 516 (2006). That is, a reversal is only warranted if the alleged error was "clearly capable of producing an unjust result." R. 2:10-2.

---

[3] We note that, contrary to the requirement of Rule 2:6-2(a)(1), the fact that these arguments were not raised in the trial court is not noted in the point headings or the arguments.

We acknowledge at the outset that the comments challenged here can fairly be characterized as imprudent statements regarding the number of persons who identified defendant. The capacity of these alleged errors to "produc[e] an unjust result" is negligible because one of the witnesses who did identify defendant was a personal friend of long-standing. Further, the potential for prejudice was essentially negated by the trial judge's vigilant and astute response.

During his opening statement, the prosecutor referred to Hurtado, Castano-Garcia, and Alvarez and stated: "All three of those witnesses are going to testify that they <u>saw this defendant stab the victim</u> and attempt to stab him again." (Emphasis added). After telling the jury that Officer Cruz detained defendant, he told them: "<u>Three individuals</u> — not including the victim at this point — were taken in police cruisers to the area where the defendant was being held and ident — 100-percent positively identified him as <u>the person who stabbed the victim</u>." (Emphasis added).

These comments strayed from the evidence that was produced at trial. Although Alvarez stated he observed defendant with a knife during the altercation, he did not state he saw defendant stab Hurtado. The evidence also failed to support the prosecutor's assertion that three witnesses identified defendant at the show-

up because the State was unable to locate one of the witnesses. The prosecutor disclosed this fact during the trial and defendant does not contend the prosecutor knew the witness was unavailable when he gave this opening statement.

Haverty was asked about the identifications at trial. When the prosecutor asked how many witnesses he brought to the scene, Officer Haverty testified: "I believe it was three." When asked about the results, Officer Haverty stated: "I believe all three were positive. They positive -- positively identified the suspect." Haverty did not identify the names of the witnesses who had made these identifications.

At this point in the trial, although two witnesses had identified defendant, Hurtado and Alvarez, only Alvarez had identified him at a show-up. Following Haverty's testimony, the trial judge questioned the prosecutor about the number of identifications Haverty had mentioned. She noted, "any prior identifications of the defendant . . . can't be testified to unless those witnesses are actually witnesses under the hearing under Evidence Rule 803." She determined that Castano-Garcia was a second person who identified defendant at the show-up and asked the assistant prosecutor who the third person was. He replied, "[t]here was another guy[, W.C.]." When the judge asked if the prosecutor planned to call W.C., the prosecutor disclosed that the

State was not able to find him. The judge stated she did not want the jury to hear further testimony about a third person identifying defendant at the show-up. She directed the prosecutor to instruct other police officers who testified about the show-up not to talk about any third identifying witness. The judge asked defense counsel if he had any objection and he replied, "Certainly not, Judge."[4]

Later, Officer Cruz took the stand and stated he "had two show-ups where people positive[ly] identified the suspect in this case."

The trial later gave a curative instruction to the jury to clarify the evidence regarding the number of identifications at the show-up. Defense counsel expressed he had no objection to the proposed statement. The court then told the jury the following:

> I think there was some mention of the fact that there were three on-scene identifications of the Defendant. Remember one of the witnesses was talking about the show-up procedure about witnesses being brought to the scene.
> And I think someone — I don't remember who — said three. There were actually two on-scene identifications of the Defendant during that show-up procedure, not three. There were

---

[4] Although defendant now complains that no curative instruction was given following Haverty's testimony, there was neither an objection nor a request for any curative instruction. Nonetheless, the trial judge took a proactive role to avert further error and defense counsel explicitly approved of the procedure she outlined.

two. And I believe and, again, it's your recollection that counts, not mine.

The on-scene identifications of the identification [sic] were by Mr. Alvarez, the owner of the bar; and also Carlos C[a]stano-Garcia, who of course both of them testified yesterday. So I just wanted to clear that up.

During his summation, the prosecutor stated Alvarez:

[p]ositively identified the Defendant at a show-up shortly after this event occurs . . . . And he says that's him, <u>the guy with the knife in his hand</u>. Comes in to court, looks at him again, and says that's him right there. That's <u>the guy with the knife in his hand</u>.

Then, discussing Officer Haverty's testimony, the prosecutor stated two witnesses, Castano-Garcia and Alvarez went to the show-up and "positively identified the Defendant as <u>the person who stabbed [Hurtado]</u> and tried to stab him two more times in the chest." In discussing Officer Cruz's testimony, the prosecutor again referenced the two show-up identifications by Castano-Garcia and Alvarez and stated, "they all positively identified the Defendant as <u>the individual who stabbed the victim</u> in this case and attempted to stab him twice more in the chest."

These comments failed to acknowledge that, although he identified defendant and said he had a blade during the altercation that resulted in the stabbing, Alvarez did not state he saw defendant stab the victim.

10                                            A-5384-14T2

"A prosecutor must 'conscientiously and ethically undertak[e] the difficult task of maintaining the precarious balance between promoting justice and achieving a conviction,' ensuring that at all times his or her 'remarks and actions [are] consistent with his or her duty to ensure that justice is achieved.'" State v. Jackson, 211 N.J. 394, 408 (2012) (alterations in original) (quoting State v. Williams, 113 N.J. 393, 447-48 (1988)). Thus, although prosecutors are afforded "considerable leeway" when they address the jury, their comments must be "related to the scope of the evidence." State v. Cole, ___ N.J. ___ (2017) (slip op. at 39-40 (quoting State v. Frost, 158 N.J. 76, 82 (1999)). References made by the prosecutor "to matters extraneous to the evidence" may provide a ground for reversal. Jackson, supra, 211 N.J. at 408.

"Notwithstanding the high standard to which a prosecutor is held as he or she gives an opening statement or summation, 'not every deviation from the legal prescriptions governing prosecutorial conduct' requires reversal." Id. at 408-09 (quoting Williams, supra, 113 N.J. at 452). "Prosecutorial misconduct is a basis for reversal of a criminal conviction if the conduct was so egregious that it deprived the defendant of the right to a fair trial." State v. Gorthy, 226 N.J. 516, 540 (2016) (quoting State v. Josephs, 174 N.J. 44, 124 (2002)). In determining whether a prosecutor's improper comments are grounds for reversal, "the

making by trial counsel of a timely and proper objection and the action of the trial judge in connection therewith are ordinarily controlling considerations." State v. McGuire, 419 N.J. Super. 88, 149 (App. Div.) (quoting State v. Wilson, 57 N.J. 39, 50-51 (1970)), certif. denied, 208 N.J. 335 (2011).

We draw no inference from the failure to object to the prosecutor's statement in his opening that three persons identified defendant at the show-up because it was unknown at that time that the third person would be unavailable to testify.

Turning to the misstatements that Alvarez identified defendant as the man who stabbed Hurtado — although we do not condone this sloppy lumping of Alvarez with the two other witnesses who did provide such testimony — the failure to object reasonably reflects defense counsel's perception that the comments were not prejudicial. Alvarez did identify defendant as holding a blade during the fight; no one else was seen with a knife; Hurtado was stabbed; and both he and defendant's friend of a dozen years testified it was defendant who stabbed him.

In reviewing the challenged comments, we consider "the tenor of the trial and the responsiveness of counsel and the court to the improprieties when they occurred." State v. Timmendequas, 161 N.J. 515, 575 (1999), cert. denied, 534 U.S. 858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001). As noted, there were no objections to

any of the comments here. The failure to object deprived the trial judge of the opportunity to ameliorate errors as they occur. See id. at 575. Still, the trial judge acted presciently and effectively to address the potential for prejudice in the testimony that three persons identified defendant at the show-up.

Weighing the improper comments of the prosecutor against the compelling evidence that it was defendant who stabbed Hurtado, we are satisfied the comments did not have the clear capacity to produce an unjust result, R. 2:10-2, requiring reversal.

IV.

Defendant argues his sentence was excessive. He contends the trial judge erred in her assessment of aggravating and mitigating factors. He also argues the judge should have imposed a more lenient sentence in light of the prosecutor's recommendation that a sentence one degree lower be imposed and the victim's endorsement of leniency. We disagree.

"Appellate review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). The Supreme Court directs appellate courts to determine whether:

> (1) the sentencing guidelines were violated;
> (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or

13

> (3) the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)) (internal quotations marks omitted).]

There were a number of statements in support of defendant at sentencing. The trial judge heard statements from defendant, defendant's mother, and defendant's wife. She received thirty-five letters supporting leniency for defendant, including one letter from the victim, Hurtado.

Defendant was on probation at the time of this offense. The presentence report states the prior offense occurred approximately one year earlier, and describes it as "aggravated assault - bodily injury with deadly weapon (recklessly) (with accomplice, kicked victim while on ground)." Defense counsel contended the weapon was a chair, rather than a deadly weapon. He stated defendant agreed to plead guilty to the offense as part of a plea agreement to preserve the ability of his brother, who was not a United States citizen, to remain in this country. The prosecutor confirmed that nothing in the presentence report stated defendant used a deadly weapon in the prior incident, but rather that his brother had used the chair. The trial judge noted defendant had stated under oath that he was guilty of the offense in pleading guilty.

Defense counsel urged the court to sentence defendant one grade lower pursuant to N.J.S.A. 2C:44-1(f)(2). He argued defendant was intoxicated and emotional at the time of the offense, and further, was remorseful and thankful the injury was minor.

The trial judge found aggravating factors three, six, and nine, N.J.S.A. 2C:44-1(a)(3), (6), (9). In finding aggravating factor three, N.J.S.A. 2C:44-1(a)(3) (the risk defendant would commit another offense), the trial judge noted defendant committed the present offense while on probation for committing a previous aggravated assault. She found that aggravating factor six, N.J.S.A. 2C:44-1(a)(6) (the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted) was also supported by the prior aggravated assault. No specific support was cited for the judge's finding of aggravating factor nine, N.J.S.A. 2C:44-1(a)(9) (the need for deterring the defendant and others from violating the law).

The judge also found mitigating factor nine, N.J.S.A. 2C:44-1(b)(9)("the character and attitude of the defendant indicated that he's unlikely to commit another offense"). However, she gave this factor limited weight. She noted, "[The present offense] does seem out of character for [defendant] based upon everything I read about him[,] . . . [b]ut in balance there's also a man who's been involved in two violent incidents."

The trial judge denied the request to sentence defendant one degree lower, explaining N.J.S.A. 2C:44-1(f)(2) permits the court to sentence defendant to a term appropriate for a crime of one degree lower only if "clearly convinced the mitigating factors substantially outweigh the aggravating factors" and the interests of justice so demand. Quoting State v. Megargel, 143 N.J. 484, 496-502 (1996), the trial judge explained "defendant must provide compelling reasons for the downgrade 'in addition to and separate from the mitigating factors that substantially outweigh the aggravating factors that the trial court finds.'"

The trial judge concluded the aggravating factors substantially outweighed the mitigating factors and the interests of justice did not demand defendant be sentenced as if the present offense were a third-degree crime. She acknowledged defendant had been pushed by Hurtado, but also that "[h]e didn't even fall to the ground," "[t]here's no allegation he was injured," and "[t]here's no evidence that Mr. Hurtado was armed or was acting in a threatening manner towards the defendant." Although Hurtado sustained only a "superficial injury," the judge noted defendant could have injured Hurtado much more seriously and, in fact, unsuccessfully attempted to stab him two more times. The judge acknowledged defendant had been intoxicated, but noted this did

not stop him from remembering, retrieving, and using the knife in his car.

The trial judge also stated: "I appreciate that Mr. Hurtado has asked for leniency, that's important to the Court, and I appreciate that [defendant] has expressed remorse. However, while he apologized[,] he also minimized his responsibility." The trial judge then sentenced defendant to seven years of incarceration with an eighty-five percent parole disqualifier.

Defendant argues the trial judge abused his discretion when it imposed a seven-year prison sentence because (1) its findings of both a need to deter defendant and that defendant was unlikely to commit another offense were inconsistent, (2) it ignored the video evidence that the victim provoked the attack relevant for mitigating factors four and five, and (3) it ignored the recommendation of the prosecutor and the victim that defendant receive a lenient sentence.

We are not persuaded by defendant's argument that the trial judge should have determined that the victim was the aggressor and, as a result, find mitigating factors four, N.J.S.A. 2C:44-1(b)(4) (substantial grounds tending to excuse or justify the defendant's conduct), and five, N.J.S.A. 2C:44-1(b)(5) (victim of defendant's conduct induced or facilitated its commission). It is undisputed that Hurtado was unarmed. Pushing and shoving are

17                                                    A-5384-14T2

inadequate provocations for initiating an assault with a deadly weapon.  See State v. Docaj, 407 N.J. Super. 352, 369 (App. Div. 2009) (noting, in a murder case in which defendant contended the offense was a passion/provocation manslaughter, "Even in instances of 'mutual combat,' the defendant's response must be proportionate to the provocation." (citing State v. Oglesby, 122 N.J. 522, 536 (1991)).

Moreover, the judge acknowledged Hurtado pushed defendant and that defendant's assault may have been in response.  She found that Hurtado's push was too weak to cause defendant to fall down, notwithstanding his level of intoxication, and therefore incomparable to defendant's violent retaliation.  The determination that mitigating factors four and five were not applicable was supported by competent, credible evidence.

We also discern no irreconcilable conflict in finding both a need to deter defendant and that defendant was unlikely to commit another offense.  Aggravating factor three evaluates a defendant's overall risk and mitigating factor nine focuses narrowly on the influence of the defendant's "character and attitude," in the determination of risk.  In this case, the court found all the support given for defendant demonstrated this offense was "out of character," but the evidence of his prior violent offense coupled with details surrounding this present offense demonstrated a

greater probability that defendant might commit another offense. In other words, defendant might typically be a law-abiding person but his character did not preclude him from engaging in behavior that was both criminal and violent. Therefore, the sentencing court's determination that the risk of defendant committing another offense outweighed his character and attitude to avoid such conduct was supported by competent, credible evidence.

Turning to the trial judge's decision not to sentence defendant to a third-degree sentence, we note the bar is very high for a defendant to obtain such relief. N.J.S.A. 2C:44-1(f)(2) provides:

> [W]here the court is <u>clearly convinced</u> that the mitigating factors <u>substantially outweigh</u> the aggravating factors and where the <u>interest of justice demands</u>, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted.
>
> [(Emphasis added).]

"The reasons justifying a downgrade must be 'compelling,' and something in addition to and separate from, the mitigating factors that substantially outweigh the aggravating factors." State v. Rice, 425 N.J. Super. 375, 384 (App. Div.) (quoting Megargel, supra, 143 N.J. at 505), certif. denied, 212 N.J. 431 (2012). However, "because the focus remains on the offense and not the offender, the surrounding circumstances used as compelling reasons

for a downgrade should arise from within the context of the offense itself." State v. Lake, 408 N.J. Super. 313, 326 (App. Div. 2009) (citing Megargel, supra, 143 N.J. at 500-01). Factors a court may consider include "the degree of the crime [which] is the focus of the sentence"; whether "[t]he surrounding circumstances of an offense may make it very similar to a lower degree offense"; and "facts personal to the defendant," including his "role in the incident." Ibid. (quoting Megargel, supra, 143 N.J. at 500-01).

The offense here was a second-degree aggravated assault with a deadly weapon. Defendant stabbed the victim just under his armpit and attempted to stab him in the chest twice, circumstances that do not "make [the offense] very similar to a lower degree offense." Defendant's role in the offense was that he left an altercation with an unarmed man to retrieve a weapon and return to stab him repeatedly.

We therefore conclude the trial judge's determination that the mitigating factors did not substantially outweigh the aggravating factors and that there were no compelling reasons to sentence defendant in the third-degree range was amply supported by the record and did not constitute an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5384-14T2