RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5174-14T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

W.D.,

 Defendant-Appellant.
______________________________

 Submitted October 10, 2017 – Decided November 2, 2017

 Before Judges Ostrer and Whipple.

 On appeal from Superior Court of New Jersey,
 Law Division, Warren County, Indictment No.
 12-09-0401.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Gilbert G. Miller, Designated
 Counsel, on the brief).

 Richard T. Burke, Warren County Prosecutor,
 attorney for respondent (Kelly Anne Shelton,
 Assistant Prosecutor, on the brief).

PER CURIAM
 Defendant, W.D., appeals from his judgment of conviction

after a jury found him guilty of third-degree attempted endangering

the welfare of a child. We affirm.

 We discern the following facts from the trial record. In

mid-March 2011, defendant met J.R. several times in a park in

Phillipsburg. J.R.'s eleven-year-old daughter knew one of

defendant's daughters from school.

 On March 19, 2011, defendant and his children invited J.R.

and her children to a barbecue. J.R. and her family arrived at

the barbecue late in the day. Once there, J.R. consumed one beer

and a number of non-prescribed pills, including Xanax and

Oxycodone. She left at approximately midnight or 1:00 a.m.

 At 2:00 a.m. on March 20, 2011, J.R. called defendant asking

to borrow money to purchase gas and food. Defendant acquiesced

and asked her to meet him at a Quick Chek, where he gave her sixty

dollars, and the two sat in his car talking. J.R. testified it

was then that defendant offered her $500 to have sex with her

daughter. J.R. left defendant's car and returned to where she was

living with her friend, A.H.

 Later that day, J.R. called defendant with A.H. present and

recorded her conversation with defendant. Again, defendant

offered J.R. $500 to have sex with her daughter. J.R. did not

 2 A-5174-14T1
recall, at trial, whether she and defendant set a time and place

for him to meet with her daughter.

 Defendant called J.R. the next day, and again they spoke

about him having sex with J.R.'s daughter. Over the next two

days, defendant placed twenty-three unanswered calls to J.R. and

three calls in which he spoke with J.R. J.R. informed her husband

and her daughter about defendant's proposition. J.R. stated she

informed her daughter so "she wouldn't be alarmed like what was

going on" but J.R. never asked whether her daughter was willing

to participate, and never intended to follow through with

defendant's plan.

 J.R. did not report the incidents to the police, and conceded

she was using multiple drugs, including Xanax, Oxycodone,

Methadone, OxyContin, and marijuana. She also testified she was

afraid of retaliation against her and her family.

 On March 23, 2011, A.H. called the Division of Child

Protection and Permanency (Division). The Division contacted the

Warren County Prosecutor's Office detectives, who notified the

Pohatcong Police Department. A detective went to defendant's

house, but he was not home. Defendant later went to the

Phillipsburg Police Department on his own volition. Defendant was

 3 A-5174-14T1
informed of his Miranda1 rights. He made a knowing and voluntary

waiver of his rights, and thereafter provided a different, but

ultimately incriminating, account of what occurred.

 Defendant told the police he met J.R. in the park with her

children and boyfriend. His daughter contacted J.R. and invited

her and her children to a picnic at his house. While there, he

gave J.R. twenty dollars for gas. After the picnic was over, J.R.

called defendant at approximately 2:00 a.m., and asked him to meet

her at the Quick Chek.

 At the Quick Chek, J.R. asked defendant for $150 so she could

move to her mother's house. During the encounter, J.R. ingested

four or five pills from her purse, and defendant was drunk.

Defendant said when he refused to give J.R. the $150, J.R. offered

that she and a friend would have sex with him for $160. She

repeatedly said, "I'll do anything please help me out." Defendant

gave her the money, they parted ways, and both of them went home.

 After that, J.R. did not call defendant, but he "called her

a few times." Eventually, J.R. called back and told him she had

been in the hospital. She also said her friend wanted $200 instead

of an additional $10. They met again, in a Hess Station parking

lot, where J.R. asked again for $200, which he refused to pay.

1
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

 4 A-5174-14T1
 The detectives questioning defendant told him J.R. alleged

the conversation with him was for "you to have sexual relationship

with her ten-year-old daughter, which you were, you were [sic]

aware of[.]" Defendant said, "maybe, maybe" when the detectives

stated "you obviously knew that you were talking about her young

daughter, correct?" Defendant then acknowledged he "got a little

out of control that night." In response to the detectives stating,

"you heard it on the tape, you know what happened" and "you avoided

telling us all about this conversation because you know it was

wrong deep down inside," defendant responded "yep." Defendant

said, "she kept on pushing things to me, trying to make, I guess

get the money" and "like I told you, she said she'll do anything"

and "I guess she pushed . . . her daughter." At this point,

defendant stated he was under the impression the daughter was

fourteen or fifteen.

 The detectives asked, "did you want to have sex with . . .

[J.R.'s] daughter?" Defendant responded, "I guess I did[.]" The

detectives then proposed a different version of event where "[J.R.]

said I'll do whatever you want or I'll give you whatever you want

and that's when you took the opportunity and you struck."

Defendant responded "yeah probably."

 5 A-5174-14T1
 Following this statement, police again informed defendant of

his Miranda rights, and he was arrested. On September 19, 2012,

defendant was indicted for third-degree attempted endangering the

welfare of a child, N.J.S.A. 2C:5-1 and 2C:24-4(a); first-degree

aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); third-degree

endangering the welfare of a child, N.J.S.A. 2C:24-4(a); second-

degree sexual assault, N.J.S.A. 2C:14-2(b); and second-degree

promoting prostitution, N.J.S.A. 2C:34-1(b)(7).2 Prior to trial,

the State moved for and obtained dismissal of all counts except

attempted endangering the welfare of a child and promoting

prostitution.

 Defendant was tried on various days between February 18 and

25, 2015. On February 24, 2015, the trial judge held a final jury

charge conference with counsel. The judge reviewed the charges

in depth with counsel, including how he would explain the elements

of the crimes charged to the jury. At no point during the charge

conference did defendant's trial counsel object or propose changes

to the jury instructions.

 The judge charged the jury that same day. The parts of the

jury instruction pertinent to this appeal are excerpted below.

 For the definition of attempt:

2
 More specifically, defendant was charged with soliciting a child
under the age of eighteen to engage in sexual acts.

 6 A-5174-14T1
 The law provides that a person is guilty of
 an attempt to commit a crime if the person
 purposely does anything which[,] under the
 circumstances a reasonable person would
 believe them to be[,] is an act constituting
 a substantial step in the course of conduct
 planned to culminate in the commission of the
 crime.

 . . . .

 The substantial step taken must strongly show
 the defendant's criminal purpose. That is,
 the step taken must be substantial, and not a
 very remote, preparatory act, and must show
 that the accused had a firmness of criminal
 purpose in order to decide whether the State
 has proven a crime of . . . attempt to engage,
 or attempt to endanger the welfare of a child.

For the definition of endangering the welfare of a child:

 [I]n order to find a defendant guilty of
 endangering the welfare of a child . . .
 requires two elements to be shown . . .: [t]hat
 [the daughter] was a child; and that the
 defendant knowingly engaged in sexual conduct
 with the child which would impair or debauch
 the morals of a child.

 . . . .

 The second element the State must prove beyond
 a reasonable doubt is that defendant knowingly
 engaged in sexual conduct which would attempt
 -- which would impair or debauch the morals
 of a child, and this is conduct which tends
 to corrupt, mar or spoil the morals a child
 under the age of . . . 16.

 During their deliberations, the jury did not express any

confusion about the meaning of "attempt" or "conduct which would

impair or debauch the morals of a child." Of the four notes

 7 A-5174-14T1
submitted to the judge by the jury,3 two were requests to review

taped evidence and transcripts, and two were regarding the

solicitation charge. Defendant was acquitted of promoting

prostitution but convicted of attempted endangering.

 Defendant was sentenced to 364 days in county jail, parole

supervision for life, Megan's Law consequences, Nicole's Law

requirements, and fined. This appeal followed.

 Defendant raises the following issues on appeal:

 POINT I.

 THE TRIAL COURT'S FINAL JURY INSTRUCTIONS WERE
 DEFICIENT IN THEIR FAILURE TO DEFINE CONDUCT
 WHICH WOULD IMPAIR OR DEBAUCH THE CHILD'S
 MORALS, DEPRIVING DEFENDANT OF A FAIR TRIAL
 (not raised below).

 POINT II.

 THE STATE FAILED TO ESTABLISH THAT DEFENDANT
 COMMITTED A CRIMINAL ATTEMPT TO ENDANGER THE
 WELFARE OF A CHILD, REQUIRING THE ENTRY OF A
 JUDGMENT OF ACQUITTAL IN THIS CASE (not raised
 below).

 When an error not brought to the attention of the trial court

is the basis of an appeal, we will not reverse unless the appellant

can show "plain error." R. 2:10-2. Plain error is one that is

"clearly capable of producing an unjust result." Ibid. Not any

possibility of an unjust result will suffice. State v. Macon, 57

3
 There was a fifth note notifying the court the jury reached a
verdict.

 8 A-5174-14T1
N.J. 325, 336 (1971). The possibility must be "sufficient to

raise a reasonable doubt as to whether the error led the jury to

a result it otherwise might not have reached." Ibid.

 Defendant argues the jury instructions were inadequate to

explain the definition of conduct that would impair or debauch the

morals of a child. He argues his acquittal on the solicitation

charge meant the jury "reached its decision to convict on a vague

feeling that defendant did an act which he planned would be a

substantial step[.]" However, defendant's counsel did not object

to the jury charges at trial, which follow the model jury charges

for the charged offenses.

 Viewing these arguments under the plain error standard,

defendant provides no basis to conclude the jury was misled and

came to an unjust result. We reject defendant's argument that the

jury could not rationally acquit on the solicitation charge and

convict on the attempt endangering charge.

 "Jurors are free to accept or reject, in part or in whole,

any aspect of testimonial evidence based on credibility." State

v. Pickett, 241 N.J. Super. 259, 266 (App. Div. 1990). An

appellate court reviews a jury verdict "under an extraordinarily

lenient standard of review," and "a conviction should not be

disturbed on appeal unless it clearly appears that there was a

miscarriage of justice under the law." R. 2:10-1; State v.

 9 A-5174-14T1
Jackson, 211 N.J. 394, 413-14 (2012). "There is no miscarriage

of justice when any trier of fact could rationally have found

beyond a reasonable doubt that the essential elements of the crime

were present." Ibid. The jury could rationally have chosen to

accept defendant's assertions that he was not the instigator of

the solicitation, and to reject J.R.'s assertions. This would not

bar the jury from convicting defendant on the attempt charge, if

the jury determined the evidence showed defendant still attempted

to have sex with J.R.'s daughter once J.R. offered him the

opportunity.

 Defendant argues it was incumbent upon the court to advise

the jury as to the specific sexual conduct the State alleged

defendant intended to do with J.R.'s daughter. We disagree.

Whatever "sex" defendant intended when he agreed to pay J.R. to

have sex with her minor daughter satisfies the elements of

endangering.

 Defendant argues the trial court erred in not entering a

judgment of acquittal because the State failed to establish that

defendant committed a criminal attempt to endanger the welfare of

a child. However, defendant's counsel did not move at the close

of the State's case, at the close of evidence, or after the jury

verdict for a judgment of acquittal. Furthermore, the court did

 10 A-5174-14T1
not abuse its discretion by not granting the judgment of acquittal

sua sponte.

 Rule 3:18-1 provides "[a]t the close of the State's case or

after the evidence of all parties has been closed, the court shall,

on defendant's motion or its own initiative, order the entry of a

judgment of acquittal . . . if the evidence is insufficient to

warrant a conviction."

 At the close of the State's case on February 24, 2015,

defendant's counsel reserved the right to make a motion under Rule

3:18-1 until the conclusion of trial. Despite the reservation,

defendant's counsel never moved for a judgment of acquittal.

 Even if no motion is made during the pendency of trial, under

Rule 3:18-2, "[i]f the jury returns a verdict of guilty . . ., a

motion for judgment of acquittal may be made . . . or it may be

renewed within 10 days after the jury is discharged or within such

further time as the court fixes during the 10-day period." If the

court grants this motion, it "may set aside a verdict of guilty

and order the entry of a judgment of acquittal[.]" Ibid. However,

after the jury returned its verdict, defendant's counsel did not

move under Rule 3:18-2.

 Under both Rule 3:18-1 and 3:18-2, a court has discretion to

enter a judgment of acquittal sua sponte, regardless of whether a

party makes a motion. To determine if the trial judge should have

 11 A-5174-14T1
acquitted defendant, we apply the same standard as the trial court.

State v. Moffa, 42 N.J. 258, 263 (1964).

 Here, viewing the evidence in a light most favorable to the

State, the court did not abuse its discretion in not granting a

judgment of acquittal because "a reasonable jury could find guilt

beyond a reasonable doubt." State v. Reyes, 50 N.J. 454, 458-59

(1967). The State presented testimony that defendant asked to

have sex with J.R.'s daughter, he followed up on the plans to have

sex with the daughter by making numerous phone calls, and he

exchanged money with J.R. A reasonable jury could have found

these actions were a substantial step in furtherance of the crime

of endangering the welfare of a child.

 Affirmed.

 12 A-5174-14T1